MINNIE A. WERTH, Respondent, v. ALFRED W. OLLIS
*et al.*, Appellants.

### St. Louis Court of Appeals, March 12, 1895.

1. **Agency:** CIRCUMSTANTIAL EVIDENCE. An agency, like any other
fact, may be established by circumstances, the conduct of the parties
and the relations previously existing between them.

2. ————: COMPETENCY OF ACTS AND DECLARATIONS OF ALLEGED AGENT.
The acts of an alleged agent pertaining to the business of the agency,
as well as his declaration that he is acting as agent, are competent
evidence against the principal when there is independent evidence
tending to prove the agency.

*Appeal from the Greene Circuit Court.*—HON. JAMES T.
NEVILLE, Judge.

REVERSED AND REMANDED.

*Mellette & Frink* for appellants.

*White & McCammon* for respondent.

BIGGS, J.—This record involves the liability of the
defendants for the amount of an unpaid bank check.
In June, 1893, the plaintiff held a note made by
George F. Davis, a resident of Fargo, Illinois. The
note was secured by a deed of trust on some property
in the city of Springfield, Missouri. The plaintiff at
that time was a resident of the city of Chicago, and
the defendants were real estate brokers in Springfield
and were doing business under the firm name of A. W.
Ollis & Company. Davis made arrangements with the
defendants to take up his loan, and he wrote to the
plaintiff to that effect under date of June 12, 1893, and
requested her to send the note and other papers to

*A. W. Ollis & Company* at Springfield, Missouri. Instead of sending the note to the defendants, as requested, the plaintiff sent it to George A. C. Woolley, of Springfield, who had acted as her agent in negotiating the loan to Davis, and with whom she was well acquainted, and on the same day she notified the defendants of that fact. There was some delay in closing up the loan, on account of the failure of the plaintiff to indorse the payments of interest on the note, and the failure of Davis to provide for the payment of back taxes on his property. Finally, on the afternoon of July 8, the matter was adjusted by the defendants drawing and delivering to Woolley the check of their firm on a bank in Springfield for the amount of the note. Thereupon Woolley delivered the note to the defendants, and the deed of release, which in the meantime the plaintiff had sent to the defendants, was filed for record. The check was made payable to Woolley, and he, instead of presenting the check and procuring a draft, indorsed the check to the plaintiff and sent it to her in Chicago. The plaintiff received it on the tenth, and immediately deposited it for collection with a bank in Chicago, which bank promptly sent it to Springfield for payment. When the check was presented, the Springfield bank had failed. It was undisputed that the defendants at the time the check was drawn, and at the time of the failure of the bank, had sufficient money on deposit in the bank to pay it. It was also uncontroverted that the bank continued to pay all checks drawn by its depositors for three days after the check was given. The question, which was controverted at the trial, was whether there was any evidence tending to prove that Woolley, in accepting and forwarding the check, acted as agent of the plaintiff. The circuit court was of the opinion that there was no such testimony, and it

directed a verdict for the plaintiff for the amount of the check. From that judgment the defendants have appealed, and complain of the instruction and the exclusion of evidence offered by them.

Whether Woolley, in receiving and forwarding the check, acted as the agent or representative of the plaintiff is the all important question in determining the liability of the defendants, for the evidence leaves no room to doubt that, if the check had been presented on the day it was given, or at any time up to 11 o'clock A. M. of the third day thereafter, it would have been paid. A careful examination of the evidence has led us to the conclusion, that the question of the agency of Mr. Woolley ought to have been submitted to the jury.

Now let us examine the evidence. On June 12, 1893, Davis notified the plaintiff by letter that he had made arrangements through the defendants to take up her loan to him. He requested her to send the note and papers to the defendants. The letter contains the following quotation from the letter of defendants to Davis: "The papers in the old loan should be sent to this office for collection, or we should be advised where they are held and by whom. Early attention will oblige, etc. Very truly, *A. W. Ollis & Company, Springfield, Mo.*" This letter was received by plaintiff by due course of mail, and, instead of sending the papers to the defendants, she sent them to Mr. Woolley. The plaintiff assigned, as a reason for this, that Davis had failed to give the full address of the defendants. She testified that she sent the papers to Woolley inclosed in a separate envelope, marked "for Mr. Ollis," and that she gave Woolley no directions whatever concerning the papers, and she was of the opinion that there was no direct communication to Mr. Woolley.

On the fourteenth day of June the defendants wrote to the plaintiff as follows: ''We are arranging a loan for Rev. G. F. Davis to take up one which we understand you hold against him. Mr. Davis sends word he has written you. If the papers are not yet forwarded, please send them to us, or some one else in this city, if preferred, and oblige,'' etc.

The plaintiff answered on the sixteenth as follows: ''Rev. Davis wrote some days ago to forward the paper, and not knowing of you, *even by name, mentioned the name Ollis, without preface.* I forwarded them to Mr. Geo. A. C. Woolley to hand you. I wish now I had waited, but I didn't know you were going to write me. You will receive the papers probably to-morrow.''

There had been some interest paid on the note, which the plaintiff had failed to indorse on the note. On June 19, the defendants wrote to plaintiff concerning this as follows: ''We have your letter of sixteenth inst., and note contents. The Davis papers are in the hands of Mr. Woolley, but there appears nothing on the note to show any interest has been paid since June, 1892. If this shows the true state of the case, we shall not have money enough in our hands to take up the papers. Kindly advise us if the note is entitled to any credits that have not been indorsed on the same. If not, Mr. Davis has erred in his calculations.''

The last letter the plaintiff answered on the twenty-first as follows: ''Your kind letter received this morning, and, in reply, I will state Rev. Davis has paid his interest up to the fifth day of June. I am sorry I have neglected writing interest paid on the back of the note, but it was overlooked.''

On July 3, the defendants again wrote the plaintiff as follows: ''Taxes had accumulated against the Davis property to such an extent that we had to wait for a remittance from Mr. Davis before we could arrange to

close his loan.   We are now ready to close the transaction, and will need a release deed from you to satisfy the record. We inclose proper blank, which please execute and acknowledge before a notary public, and forward same by early mail. We could avoid this formality, were Mr. Davis here with the canceled coupons in his possession.''

In answer to this the plaintiff wrote, under date of July 6, as follows:  ''I received your letter inclosing deed which I attended to and sent to you.  Hoping, now you have everything you need, you will forward the draft for the amount in a few days.''   One of the defendants testified that this letter was not received until after the matter had been settled with Woolley.

After the adjustment the defendants wrote to the plaintiff as follows:   ''Replying to your letter of the sixth inst., will say the quitclaim deed came duly to hand, and we at once adjusted the matter with Mr. Woolley, and we doubt not a remittance is in your hands by this time.''   The plaintiff replied:  ''Mr. Woolley has forwarded the full amount of Davis' loan, and I have put it in First National Bank for collection.''

The plaintiff in her testimony denied that she had appointed, or had any intention of appointing, Mr. Woolley as her agent, and that the note and other papers were sent to him for the sole purpose of delivery to the defendants, and that she would have sent them directly to the defendants if she had been informed of their full address.   She admitted that she was not acquainted with the defendants at the time, and had never heard of them before receiving the letter from Mr. Davis, and that she had known Mr. Woolley for several years, and that, prior to that, he had always acted as her agent when she had business transactions in Springfield.

An agency, like any other fact, may be proved by circumstances and the conduct of the parties, and the relations that had previously existed between them. The plaintiff lived in Chicago, and Davis, who was her debtor, asked her to send to defendants, who were his agents, his note for cancellation and payment. The plaintiff knew nothing of the defendants; and hence it was not unreasonable that she should decline to entrust to them her valuable papers at the suggestion of Davis, her debtor. She did not know their reputation for honesty, or whether they were pecuniarily responsible.

But it is quite reasonable that she should send her note to some responsible person with whom she was acquainted, and who was known to her to be solvent. She knew Mr. Woolley. He had in other matters acted as her agent, and it was but reasonable and prudent that she should send the papers to him. However, that she should fail to give him any instructions, or even write him a line of explanation, is rather unusual. She says that she inclosed the papers in an envelope and marked it "for Mr. Ollis," and that this was inclosed in another envelope and addressed to Mr. Woolley. When she received the first letter from the defendants, she answered that she would have sent the papers direct to them if Mr. Davis had given her their full address. Again, when the defendants wrote to her concerning the credits for interest paid, they stated to her that the papers were then in Mr. Woolley's possession. In her reply she expressed no surprise at this, and gave no additional directions for the delivery of the papers to the defendants. These facts and circumstances were sufficient in our judgment to carry the question of the agency of Woolley to the jury. The evidence justified the inference, that the plaintiff sent the papers to Woolley with some kind of directions, and that the plaintiff did not decline to send them direct to

the defendants for the reason that she did not know their full address, but for the reason that she did not know them, either personally or by reputation, and that she was not willing to entrust her note to them without some assurance that they were financially responsible. In fact, she admitted this on cross-examination. At the same time she felt some delicacy in apprising them of her prudence, but rather attempted to conceal her lack of confidence by writing that Davis had failed to give her the name of their firm, a statement which is not borne out by the letter of Mr. Davis to her.

Under the view that we take of the evidence, the action of the circuit court in excluding the acts and declarations of Woolley in reference to the transaction was error. Whenever there is independent evidence tending to prove the agency, it is competent to prove all the acts of the alleged agent pertaining to the business, as well as his declaration that he was acting as agent in the particular transaction.

With the concurrence of the other judges the judgment of the circuit court will be reversed, and the cause remanded. It is so ordered.