THE STATE EX REL. VESPER-BUICK AUTOMOBILE COMPANY v. CHARLES H. DAUES ET AL., Judges of St. Louis Court of Appeals.—19 S. W. (2d) 700.

Division One, July 30, 1929.

*W. E. Moser* and *Hensley, Allen & Marsalek* for relator.

*Eugene J. McMahon* and *Charles E. Morrow* for respondents.

SEDDON C.—This is an original proceeding in certiorari wherein the relator seeks to have quashed the record and judgment of the St. Louis Court of Appeals in a certain cause lately pending in said court entitled, Charles Lanham and Anna Lanham, his wife, respondents, v. Vesper-Buick Automobile Company, a corporation, appellant, wherein said Court of Appeals affirmed the judgment of the Circuit Court of the City of St. Louis entered upon a verdict

of a jury in favor of the plaintiffs and respondents. Before the submission of the certiorari proceeding in this court, the Hon. Charles H. Daues resigned his office as Judge of the St. Louis Court of Appeals, and his successor in said office, the Hon. George F. Haid, has been substituted as a party respondent herein in the place and stead of Judge Daues, and the substituted party has duly entered his appearance as party respondent in this court.

The opinion of the respondents in the appealed cause, insofar as such opinion involves the question of conflict with the last previous rulings of this court upon the subject discussed and ruled by respondents in such opinion, thus states and recites the applicable facts, and the conclusions of law reached and announced by the respondents, and applied to the recited state of facts:

"This is an action for damages for the wrongful death of plaintiff's minor child, Eugene Lanham, who was killed on October 10, 1925, when he was struck by an automobile, driven by defendant, John J. Bulan, a mechanic in the general employ of defendant, The Vesper-Buick Automobile Company. A third defendant, John U. Wanner, was joined in the action, inasmuch as the automobile in question had borne license plates that were shown by the official records to have been issued to him. At the close of plaintiffs' case, plaintiffs dismissed as to defendants Bulan and Wanner, whereupon the trial proceeded as to defendant, The Vesper-Buick Automobile Company alone, resulting in the return of a verdict in favor of plaintiffs, and against such defendant, for the sum of $3,000. Judgment was duly rendered, and the motion for a new trial of defendant, The Vesper-Buick Automobile Company, filed and overruled, after which an appeal was taken to this court.

"So far as concerns the respective pleadings, it will suffice to say that plaintiffs, in their petition, and in the submission of the case to the jury, relied upon negligence under the humanitarian doctrine; and that the separate answer of each of the three defendants was a general denial.

"The casualty herein involved occurred about three o'clock, on a Saturday afternoon, in front of 2117 Olive Street, in the city of St. Louis, where plaintiffs at the time resided. The deceased was a small child, five years of age, and had been playing on the sidewalk in front of his home with some other children of the neighborhood. A larger child ran out into the street towards the south, followed by the deceased, who went as far as the middle of the car tracks, when he turned to go back to the north. As he did so, he took one step forward, and was instantly struck by a Buick coupe, driven westwardly by defendant Bulan, and bearing Missouri license No. 118,765 for 1925, and was dragged twenty-five or thirty feet before the automobile was brought to a stop. The child was then

placed in the automobile, and taken to the City Hospital, where it was found that life was extinct, after which the body was taken to the morgue by Bulan and those parties accompanying him. . . .

"It appeared from the testimony that the license plates upon the car that struck the deceased had originally been issued to defendant Wanner, for use upon a Buick sedan owned by him. However, on August 12, 1925, Wanner's sedan had been damaged beyond repair in a collision, and had been taken on the same day to the maintenance department of defendant, The Vesper-Buick Automobile Company, in the city of St. Louis. On September 2nd following, Wanner gave his order for a new car to such company, and was allowed a credit of $150 on the salvage from the old car in part payment for the new one. At the same time, he directed the company to retain his license plates until the new car was delivered, and on October 15th he received the new car with the original license plates thereon.

"It was also shown by Officer Hayhurst of the police force, who had accompanied Bulan to the City Hospital, and then to the morgue, that, after leaving the morgue, he and Bulan went to the station, where Bulan was 'booked' and his 'pedigree taken.' Over the strenuous objections of counsel for defendant, The Vesper-Buick Automobile Company, the witness was permitted to testify that Bulan had stated to him at the station that he was employed by the corporate defendant as a mechanic; that he received a commission on cars sold by such company; and that he had had the car in question out for demonstration, and was on his way back to the company's place of business when the accident happened. It further appeared that Bulan called defendant, The Vesper-Buick Automobile Company, over the telephone from the station, and requested that someone be sent to get the car.

"A second police officer, Hartwig, by name, testified that, after he had completed his investigation at the scene of the accident, he waited at the station for the return of Hayhurst and Bulan from the hospital, after which he and Hayhurst jointly propounded certain questions to Bulan; and that a period of at least one hour had elapsed between the time of the accident, and the time when the questions were asked.

"At the conclusion of plaintiffs' case, it was admitted by counsel for defendant, The Vesper-Buick Automobile Company, that Bulan was employed by such company as a mechanic, and that he had worked for it in such capacity both before and after the accident.

"The point on which defendant, The Vesper-Buick Automobile Company (hereinafter to be called the appellant), seems to place its chief reliance, as it asks for a reversal of the judgment, is the action of the court in permitting plaintiffs, over the objection of counsel, to prove, by Officer Hayhurst, the various statements alleged

to have been made by Bulan at the police station, at least an hour after the casualty had occurred, with reference to the nature and scope of his employment at the time of the accident. Appellant argues that such statements were not admissible against it, in that, as a general proposition of law, the fact of agency may not be established by the mere declarations of the alleged agent; that such declarations are admissible only when made by the agent while transacting the business of his principal, within the scope of his agency, and then only when such declarations are a part of the *res gestae;* and that the circumstances of this case, and particularly the lapse of time, and the multiplicity of incidents in which Bulan had been engaged, repel the latter idea, that is, that the statements in question were spontaneous exclamations on the part of Bulan while he was under the excitement of the event itself, rather than a studied narrative by him of the facts in connection with a past transaction.

"We have given careful consideration to the suggestions thus made by learned counsel for appellant, and, though we readily concede that much of their argument is of a convincing nature, we have, nevertheless, reached the conclusion that there was no error in the admission of the evidence complained of, even though it did tend to establish the fact of the agency of Bulan for appellant at the time when the tort was committed.

"Passing for the moment the testimony of Officer Hayhurst, we observe from the record as a whole that it was admitted by counsel for appellant that Bulan was in its general employ, both before and after the casualty, irrespective of what the precise scope of his agency may have been. We are further mindful that, on the occasion in question, he was driving an automobile on which were fastened license tags which had been delivered into the hands of appellant for safekeeping; that he requested appellant over the telephone to send someone to the police station to take charge of the automobile, and that shortly thereafter some unidentified person did actually get the machine in response to such request; and that, only five days later, the identical license tags were again found in the possession and under the exclusive control of appellant, and were returned by it to Wanner upon the new automobile delivered to him at the time. Consequently, even if Officer Hayhurst's testimony be wholly disregarded, it seems clear to our minds that the uncontradicted facts and circumstances we have just detailed were amply sufficient, not only to give rise to the reasonable and legitimate inference that the automobile in question was owned by, or under the control of, appellant, at the time the deceased came to his death, so as to make out a prima-facie case of agency, but also, to refute whatever presumptions might otherwise have existed that the automobile was the property of Bulan, since he was the one shown to have

been in possession of it, or that the law had not been violated by appellant by permitting an illegal use of Wanner's license plates.

"Furthermore, whatever the destination of Bulan may have been as he drove westwardly along Olive Street, we do not think that it can be seriously contended that he turned completely aside from the line of, or wholly abandoned, his duty to his master, when, after the accident, prompted by the strongest impulses of humanity, and in response to a proper respect for the law, he hurried with the body of his victim to the hospital, and then to the morgue, after which he himself went to the police station in order that a record might be made of the event. In other words, as a representative of appellant, he pursued the very course that appellant itself would have taken under the identical circumstances, had it possessed a personal capacity to act, and been in charge of the automobile at the time. Indeed, as we view the case, the very most that could be fairly claimed is that there was merely an incidental departure by Bulan from the predesigned course of his duty, during which his private purposes were commingled with those of appellant; but, even so, appellant would not have been absolved from further connection with the subsequent events in the case. Consequently, since Bulan, under either theory in the matter, was yet acting in his capacity as agent or servant of appellant at the time the statements were made by him to the police officers at the station, in respect to the nature and extent of his employment, it follows that the testimony of Officer Hayhurst concerning such statements or declarations was competent, irrespective of whether they could properly be considered a part of the *res gestae* or not. We reach this conclusion for the reason that, even though the fact of Bulan's agency might not have been established solely by his own declarations, nevertheless, after a prima-facie case of agency had been proved against appellant from the independent facts and circumstances in evidence, the declarations made by Bulan in the transaction of, and relative to, the business contemplated by his agency, were admissible against appellant, as corroborative of, and cumulative to, such prima-facie case otherwise made. [Peck v. Ritchey, 66 Mo. 114; Barz v. Fleischmann Yeast Co., 308 Mo. 288, 299, 271 S. W. 361; Smith v. O'Bryant (Mo. App.), 181 S. W. 123; Oil Well Supply Co. v. Metcalf, 174 Mo. App. 555, 160 S. W. 897; Werth v. Ollis, 61 Mo. App. 401; Hoffman Heading & Stave Co. v. St. Louis, I. M. & S. Ry. Co., 119 Mo. App. 495, 502; Union Bank of Kirksville v. Wheat, 58 Mo. App. 11, 16.]

"Having thus disposed of all objections voiced by appellant to the admission of evidence, we are now brought to a consideration of the next assignment of error, namely, that the court should have directed a verdict for appellant at the close of the whole case. There

will be no occasion for a restatement of our views upon the question of the proof of the agency of Bulan for appellant at the time of the casualty, since everything that has been said in connection with the disposition of the prior point for decision applies with equal appropriateness here.''

After furthermore finding and ruling, in said opinion, that there was substantial evidence upon which to submit to the jury the issue of appellant's (relator's) negligence, and that no error prejudicial to appellant's rights, or materially affecting the merits of the action, was committed by the trial court, the respondents ordered that the judgment of the circuit court be affirmed.

I.   This is an original proceeding in certiorari, wherein the superintending control of this court over the respondent Court of Appeals (which supervisory control is granted to, and reposed in, this court by Section 8 of the amendment of 1884 to Article VI of the Constitution of Missouri, in order that there may be uniformity and harmony in the case law of the State as announced and declared by the Supreme Court and by the Courts of Appeals) is invoked by relator upon the claim that the respondent Court of Appeals, in its opinion under review herein, has exceeded its prescribed jurisdiction in that said court has failed to follow the last previous rulings of this court upon the subject and matters ruled and decided in such opinion by said Court of Appeals.   Hence, the single question which this court may determine in the present proceeding is whether the rulings and decision of the respondent judges of the St. Louis Court of Appeals, under review herein, clearly contravene a previous and controlling decision of this court which announces some general principle of law upon the subject, or which has been ruled upon the same, or a similar, state of facts.   [State ex rel. v. Reynolds, 287 Mo. 169; State ex rel. v. Reynolds, 289 Mo. 506; State ex rel. v. Allen, 294 Mo. 214; State ex rel. v. Trimble, 250 S. W. 384.]   Unless the decision and rulings of respondents under review herein clearly conflict, in the aforementioned respects, with some previous and controlling decision of this court, this court has no right or authority to interfere with, or to supervise, the findings of fact and conclusions of law announced by the respondents; this, for the reason that, under the Constitution and laws of this State, each of the several Courts of Appeals is a court of last and final resort, when acting within its prescribed jurisdiction, and its rulings, decisions and judgments, whether they be right or wrong, are final and conclusive, when sought to be reviewed in this court by certiorari, except only in those cases wherein it clearly appears that a Court of Appeals has announced some general principle of law contrary to the last previous announcement of this court upon

396

the subject, or, on a given state of facts, such Court of Appeals has announced and applied a conclusion of law or equity contrary to a conclusion announced and applied by this court upon the same, or a similar, state of facts. [State ex rel. v. Reynolds, 214 S. W. 121, 122; State ex rel. v. Allen, 256 S. W. 1049, 1052; State ex rel. v. Allen, 267 S. W. 843, 844; State ex rel. v. Daues, 288 S. W. 14, 15; State ex rel. v. Trimble, 290 S. W. 115, 117.]

At the outset, it is claimed by the relator herein that the respondents, in arriving at their finding and statement of the facts in the cause under review, have misconceived the facts in evidence as disclosed by the record in such cause, and therefore relator asks this court to look to the entire evidence in the cause, in order to ascertain the facts upon which the respondents grounded their opinion, and upon which the respondents announced and applied their conclusions of law. In other words, relator would have this court examine the entire record in the cause which was pending in the Court of Appeals, in order to ascertain for ourselves the evidentiary facts in such cause, and, upon the evidentiary facts as so ascertained by this court, relator then would have this court arrive at our own finding of the facts, and reconcile any discrepancies and differences between the facts as found and stated by respondents in their opinion herein and the evidentiary facts as found by this court upon our own inspection of the entire record in such cause. The rule is well settled by this court that, in this character of proceeding, we cannot go beyond the opinion of the Court of Appeals to ascertain the evidentiary facts; such rule is predicated upon the reasonable and fair presumption that the Court of Appeals, as a court of last and final resort, has done its full duty in undertaking to state all the facts of record bearing upon the questions ruled and decided by such court. [State ex rel. v. Ellison, 266 Mo. 604, 610; State ex rel. v. Reynolds, 272 Mo. 588, 596; State ex rel. v. Ellison, 273 Mo. 218, 230; State ex rel. v. Ellison, 278 Mo. 42, 47; Ex parte Dick & Brothers Brewery Co. v. Ellison, 287 Mo. 139, 149.]

II. The opinion of the respondents under review herein recites the following substantive facts, as found by respondents from the record in the cause pending in the Court of Appeals: The deceased child, Eugene Lanham, was struck and killed by a Buick automobile coupe driven and operated by one Bulan; it was admitted by relator, on the trial of the cause in the circuit court, that Bulan, the driver of the automobile, was in the general employment of relator, as a mechanic, both before and after the casualty; that upon the automobile driven by Bulan, which automobile struck and killed the deceased child, were fastened

certain automobile license plates, bearing the identification number 118-765 for the year 1925, which, at some time prior to the casualty, had been delivered into the hands, or into the custody, of relator by one Wanner, for safekeeping by the relator; that, five days after the casualty, the identical license plates, bearing the identification number aforesaid, were in the possession and under the exclusive control of relator, at which latter·time such license plates were returned by relator to Wanner, fastened and attached upon another automobile then delivered to Wanner by the relator; that Bulan, the driver of the automobile which struck and killed the deceased child, after the lapse of at least an hour after the casualty, telephoned to relator from the police station, and requested the relator to send someone to the police station to get, and to take charge of, said automobile; and that shortly thereafter some unidentified person did actually get the automobile in response to such request made over the telephone to relator by Bulan. Upon such uncontradicted facts and circumstances (found by respondents from the record before them), the respondents reached and announced the conclusion of law that there was prima-facie evidence that the automobile in question was owned by, or was under the control of, relator at the time the deceased child was struck and killed by said automobile, and that Bulan, the driver of the automobile, was the agent of relator at the time of the casualty, and was acting at such time within the scope of his agency and employment.

Relator claims that the holding and conclusion of respondents, which is to the effect that the presence and use of the automobile license plates (which had been issued to Wanner, and which the evidence shows had been delivered by Wanner into the custody and control of relator for safekeeping on September 2, 1925, more than a month prior to decedent's injury and death) upon the automobile driven by Bulan permits the drawing of the reasonable and legitimate inference that the automobile was owned by, or was under the control of, the relator at the time of the casualty, conflicts with the rule or principle of law announced by this court in Long v. McDow, 87 Mo. 197; Hendricks v. Calloway, 211 Mo. 536; Maysville v. Truex, 235 Mo. 619; and Nelson v. Jones, 245 Mo. 579. The foregoing decisions of this court announce the general rule or principle that the "presumption of law is in favor of the rightful nature of every act; in the law there is a presumption in favor of innocence; a wrong is not to be presumed; and, in the absence of evidence to the contrary, the law presumes that a citizen proceeds by right and not by wrong." Relator claims that, under and by virtue of the provisions of the Motor Vehicle Act of this State (Laws 1921, 1st Ex. Sess., pp. 76 to 107, inclusive, as amended by Laws 1925, pp. 292-294), it is made a

penal offense for any person to operate a motor vehicle bearing thereon any numbered identification license plates other than those issued by the commissioner of motor vehicles to the registered owner of such motor vehicle, and therefore the numbered license plates issued to Wanner, as the registered owner of another and different motor vehicle, were being unlawfully and wrongfully used, in violation of the statute, upon the automobile which was in the possession of, and was being operated by, Bulan at the time of the casualty; that there was no evidence that relator countenanced, consented to, ordered, or even knew of, Bulan's wrongful and unlawful use of the numbered license plates (issued to Wanner) upon the automobile in question; that the conclusion reached and announced by respondents is necessarily based upon the inference, presumption and premise that relator ordered, or consented to, such wrongful and unlawful use by Bulan of the aforesaid license plates upon the automobile in question; and hence it is claimed by relator that the conclusion and ruling of respondents is predicated upon the inference and presumption that relator was likewise guilty of a violation of the penal provisions of the Motor Vehicle Act of this State, and that such conclusion and ruling of respondents conflicts with the general principle of law, announced by this court in the afore-cited cases, to the effect that, in the absence of evidence to the contrary, a wrongful or unlawful action, or conduct, is not to be presumed, but on the contrary, the presumption of law is in favor of innocence, and of rightful and lawful action and conduct. The presumption and rule of law thus contended for by relator, however, is equally applicable to the action or conduct of Bulan in using the numbered license plates issued to Wanner, which were shown by the evidence to have been delivered for safekeeping into the exclusive custody, control and possession of relator. There is no evidence that Bulan took such license plates from the relator (which was shown to have had the exclusive custody, control and possession thereof) without the permission, consent or knowledge of the relator, and therefore the presumption or rule of law contended for by relator applies as well to Bulan, namely, that, in using such license plates, Bulan came into possession of the license plates "by right and not by wrong." In other words, we believe that the presumption applies herein that Bulan used the license plates with the knowledge, consent and permission of relator, for, in the absence of evidence to the contrary, it is not to be presumed (under the rule announced by the decisions of this court cited, and relied upon, by relator) that Bulan *wrongfully* took and used the license plates, without relator's knowledge, consent, or acquiescence. In announcing the conclusion that the uncontradicted facts and circumstances in evidence, detailed in respondents' opinion, were amply sufficient to give rise to the reason-

able and legitimate inference that the automobile driven and operated by Bulan was owned by, or was under the control of, relator, the respondents, in our opinion, have not contravened any rule or principle of law which has been announced by this court upon the subject, or which has been applied by this court to the same, or to a similar, state of facts.

III. Relator claims that the ruling of respondents, in holding that the uncontradicted facts and circumstances in evidence are sufficient to make out a prima-facie case that Bulan was acting as the agent of relator, and was acting within the scope of his agency and employment, at the time of the casualty, contravenes and conflicts with the prior rulings of this court, as announced in the following decisions: Walker v. Railroad Co., 121 Mo. 575; Guthrie v. Holmes, 272 Mo. 215; Hays v. Hogan, 273 Mo. 1; Bolman v. Bullene, 200 S. W. 1068; and Horn v. Rhoads, 296 S. W. 389.

We have given close and thoughtful analysis to the several decisions of this court cited by relator, and it appears to our minds that each of the cited cases was ruled upon a state of facts wholly dissimilar to the state of facts upon which the aforesaid ruling of respondents herein is predicated. Unlike the record before us in the instant proceeding, there was direct and positive evidence upon the record in each of the afore-cited cases that the person whose negligence occasioned the injury for which recovery was sought was not engaged, at the time the injury was inflicted, in any service or business of the defendant sought to be held actionably liable for such injury, but that the person whose negligence occasioned the injury was engaged, at the time of the injury, in the pursuance of some business or purpose of his own. For instance, in the Walker case, supra, plaintiff was injured by being struck by an iron drill, negligently thrown from a moving train of defendant railroad company by defendant's baggageman, and the evidence of plaintiff disclosed the undisputed fact that the drill was being transported gratuitously for plaintiff by the baggageman, without any pecuniary compensation or benefit accruing to defendant, and without the knowledge or consent of defendant, upon which undisputed evidence this court held that the sole duty of the baggageman was to look after and handle the baggage of passengers for hire upon defendant's train, and that carrying the drill gratuitously for plaintiff, and merely for plaintiff's accommodation, was not within the scope of the baggageman's employment; wherefore, the baggageman was not serving the defendant in gratuitously transporting and carrying the drill for plaintiff, but was engaged in his own business, and defendant was held not actionably liable for the negligence of the baggageman in handling the drill and throwing the same from the train. In the

Guthrie case, supra, there was positive and direct evidence that defendant's automobile chauffeur had been directed by his employer to return the automobile to defendant's garage, after the chauffeur had driven his employer to a railway station, where the employer boarded a railroad train and departed for a distant destination, and that the chauffeur, in disobedience of his employer's order to return the automobile to defendant's garage, which act could have been accomplished in an hour of time, went on a ''joy ride,'' lasting some four or five hours, in the course of which ride the chauffeur, who was accompanied by several companions of his choosing, drove the automobile over a long and circuitous route through the city, resulting in a collision with the injured person; held, that the evidence conclusively showed that the plaintiff was engaged in his own business at the time of the injury, and was not engaged in the performance of any duty or service for the defendant master. In the Hays and Bolman cases, supra, the evidence indisputably disclosed the fact that the driver of the automobile which inflicted the injury was an adult member of the family of the defendant automobile owner, and was not in the employment of defendant, and that the driver of the automobile, at the time of the injury, was engaged in some pursuit of his own, and not in furtherance of any business or purpose of the defendant owner of the automobile. In the Horn case, supra, the undisputed evidence showed that the driver of the automobile was never at any time in the general employment of the defendant owner of the automobile for any purpose, but that the driver of the automobile, on his own initiative and for his own purposes, obtained the defendant's permission to take and use the automobile for the purpose of demonstrating it to a prospective buyer, in pursuit of which purpose and business of the automobile driver damage was occasioned by the negligent operation of the automobile.

In the instant proceeding, however, the opinion of respondents discloses that it was admitted by relator, upon the trial of the cause, that Bulan, the driver of the automobile which inflicted the injury, was in the general employment of relator before and after the infliction of the injury, and that respondents reached the conclusion that the uncontradicted facts and circumstances in evidence were sufficient to give rise to the reasonable and legitimate inference that the automobile which inflicted the injury was owned by, or was under the control of, relator at the time of the injury. No evidence is disclosed by respondents' opinion to have been adduced on the trial of the cause tending to show that Bulan, at the time of the injury to the deceased child, was driving the automobile in pursuance of some business or purpose of his own, or that Bulan, at the time of the injury, was not performing any service, business or purpose of the

relator. In Guthrie v. Holmes, 272 Mo. 215, 237, this court, en banc, announced the rule "that if the ownership of the car be shown to be in defendant, and the chauffeur is shown to be in the general employ of the defendant, then there would be a presumption that he was in the service of the master at the time." In O'Malley v. Construction Co., 255 Mo. 386, 391, wherein plaintiff sought recovery of damages for personal injuries suffered by being run down by a wagon, this Division of this court held that, where there is sufficient evidence to warrant a finding that defendant owned the wagon, it is not necessary for plaintiff to show affirmatively that the driver of the wagon was defendant's servant, or that the driver of the wagon was acting at the time within the scope of his employment.

The ruling of respondents herein appears to be in consonance and harmony with the rulings announced by this court in Guthrie v. Holmes, and in O'Malley v. Construction Co., supra. We find no conflict between the foregoing ruling announced by respondents herein and any ruling of this court made upon the same, or upon a similar, state of facts.

IV. Relator furthermore insists that the ruling and decision of respondents with respect to the competency and admissibility of the testimony of the police officer, Hayhurst, wherein he related the statements and declarations made by Bulan, the driver of the automobile, while under examination by the police officers at the police station at least an hour after the occurrence of the casualty, is in conflict with the following controlling decisions of this court: Barker v. Railway Co., 126 Mo. 143; Koenig v. Railway Co., 173 Mo. 698; Redmon v. Street Railway Co., 185 Mo. 1; and Frye v. Railway Co., 200 Mo. 377.

The testimony of the police officer (ruled by the respondents to have been properly admissible) was that Bulan had stated to the officer at the police station that he (Bulan) was employed by the relator as a mechanic; that he received a commission on (automobile) cars sold by such company; and that he had had the (automobile) car in question out for demonstration, and was on his way back to the company's place of business when the accident occurred. The respondents hold the aforesaid testimony of the police officer to be competent and admissible, irrespective of whether the statements and declarations of Bulan can properly be considered a part of the res gestae or not, the respondents basing their conclusion and ruling upon the ground (as expressed in respondents' opinion) "that even though the fact of Bulan's agency might not have been established solely by his own declarations, nevertheless, after a prima-facie case

of agency had been proved against appellant from the independent facts and circumstances in evidence, the declarations made by Bulan in the transaction of, and relative to, the business contemplated by his agency, were admissible against appellant (relator), as corroborative of, and cumulative to, such prima-facie case otherwise made."

In Barker v. Railway Co., 126 Mo. 143, 148, this court, en banc, held that the testimony of a passenger as to the statements or declarations of a railway train conductor, made to such passenger, respecting the ejection of plaintiff from the train a few minutes prior thereto, was not admissible against the defendant railway company, either as an admission of the defendant, or as part of the *res gestae*. Said BARCLAY, J., speaking for a majority of this court: "In Missouri it is too well settled by precedents to admit of doubt that no such conversation could be given in evidence with the force of an admission by defendant. [Citing numerous authorities.] *The conductor was employed to represent the company in the management and control of its train.* The company was answerable for his actions *within the fair scope of that employment. But the company was certainly not bound by any declaration of his motives which did not accompany, or form part of, some act or transaction within th' apparent line of the service for which he was employed."* [Italics ours.]

Speaking to a similar matter, BURGESS, J., said in Koenig v. Railway Co., 173 Mo. 698, 721: "What the motorman said was a narration of a past event with respect to which he was not authorized to speak for his employer or master. *His business was to control and manage the cars of which he had care,* and for whose actions within the scope of his employment his employer was answerable, *but for nothing he said which did not accompany or form a part of the accident,* in other words, the *res gestae."*

Again, this court, in Redmon v. Street Railway Co., 185 Mo. 1, 12, re-announced the controlling rule or principle of law upon the subject, thus: "The admission or declaration of an agent binds the principal only when it is made during the continuance of the agency in regard to the transaction then depending. This must be regarded as settled law in this State." [Citing numerous authorities in support of the stated rule.]

In Frye v. Railway Co., 200 Mo. 377, 406, this Division of our court ruled that the testimony of a witness as to declarations or statements made by an employee of defendant railway company respecting a past event is not admissible against the defendant, saying therein that "no principle is more firmly settled than that an agent cannot bind his principal in that way."

Respondents would justify their ruling and conclusion upon the subject on the theory and premise that Bulan had not departed from

the scope of his employment and agency when, after the casualty, he took the body of the child to the City Hospital, and then to the morgue, after which he accompanied the police officers to the police station for the purpose of being "booked" and "his pedigree taken." Respondents say (in their opinion) that, in so doing, Bulan "pursued the very course that appellant [relator] itself would have taken under the identical circumstances, had it [relator] possessed a personal capacity to act, and been in charge of the automobile at the time." In support of such conclusion, respondents claim to have followed the rulings of this court in Peck v. Ritchey, 66 Mo. 114, 118, and in Barz v. Fleischmann Yeast Co., 308 Mo. 288, 299. We do not think that the Peck case is authority for the conclusion reached by respondents and applied to the facts herein, for in the Peck case this court was cautious to limit the application of the rule therein announced by saying: "That the declarations of a person, who assumed to act as agent of another, are not admissible to establish the agency is well settled; but it is equally well settled that, after the party alleging the agency has made a prima-facie case of agency against the principal, any declarations made by the agent *in the prosecution of, and relative to the business contemplated by such agency,* are admissible against the principal." [Italics ours.] The opinion in the Barz case is not authoritative or controlling as a *ruling,* or announcement of any rule or principle of law by this court, inasmuch as the *opinion* in that case did not have the concurrence of a majority of the judges of this court, only three of the judges having concurred in the *opinion,* an equal number of the judges having dissented to the opinion, and one of the judges concurring only in the result of the decision in the case. Thus, while there was a *decision* reached by this court in the Barz case; there was no authoritative *opinion,* or announcement of the law of the case, made by a majority of the members of this court.

We hold to the view and opinion that, upon the facts and circumstances recited in respondents' opinion herein, Bulan was not engaged in the performance of any duty or service to his employer which was contemplated by his agency and employment at the time he is purported to have made the statements or declarations to the police officers. Bulan's duty, as agent and servant of the relator, was to drive and operate the automobile. Certainly, it cannot well be said, we think, that Bulan was in the performance of such duty or service when he was inside the police station, and when he had wholly departed from his place of duty in the automobile. In holding a conversation with the police officers inside the police station, even though he was being "booked" by the police officers for some possible transgression of the law in the operation of the automobile, he was not, at that time, performing any duty or service

404

for relator in the prosecution of, and contemplated by, his employment and agency as the driver and operator of an automobile, but, on the other hand, he appears to have been engaged wholly in a personal and private business of his own. Hence, Bulan's statements and declarations made at that time, and under those circumstances, were not binding upon, or admissible against, relator, under the controlling rulings and decisions of this court upon the subject, hereinabove cited and discussed.' We deem the ruling of respondents upon the subject to be in clear conflict and contravention with the prior and controlling rulings of this court upon the subject, as announced in the cases cited, each of which cases was ruled by this court upon a state of facts which bore close similarity to the substantive facts herein.

It follows, therefore, that such part of the record and opinion of the respondents, under review herein, as discusses and rules the question of the admissibility and competency of the testimony of the police officers, respecting the purported statements and declarations made by Bulan to such officers at the police station, must be quashed. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.