Horton ROSSER and Lawson Fore, Plaintiffs-Respondents,

v.

STANDARD MILLING COMPANY, a Corporation, Defendant-Appellant,

and

Edward F. Doyle, Defendant.

No. 46412.

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

Culver, Phillip, Kaufmann & Smith by W. J. Sherwood, W. H. Utz, Jr., St. Joseph, for defendant-appellant.

Price Shoemaker, Elmer E. Reital, St. Joseph, for plaintiffs-respondents.

HOLMAN, Commissioner.

At about 5:30 p. m. on September 17, 1954, plaintiffs received personal injuries and damage to their property when the car in which they were riding was struck by a truck being driven by defendant Edward F. Doyle. In this action against Doyle and the truck owner, Standard Milling Company, plaintiff Horton Rosser obtained a verdict for $2,965.50 and plaintiff Lawson Fore a verdict for $7,000. The verdicts were against both defendants. Doyle did not appeal. The corporate defendant appealed from the ensuing judgments to the Kansas City Court of Appeals but that.

court transferred the appeal here as it was of the view that the amount in dispute exceeded $7,500. We have appellate jurisdiction for the reason stated by the court of appeals. Keely v. Arkansas Motor Freight Lines, Mo.Sup., 278 S.W.2d 765.

Plaintiffs' recovery against the appellant was based upon the doctrine of respondeat superior, the petition alleging "that at all times hereinafter mentioned Edward F. Doyle was the agent, servant and employee of defendant Standard Milling Company and, at the time of the collision hereinafter described, said Edward F. Doyle was engaged in the business of defendant Standard Milling Company, and at said time was acting within the scope of his employment."

The instant collision occurred on U. S. Highway 36 about one mile west of Troy, Kansas. Plaintiffs were both professional rodeo contestants. On the afternoon in question they were en route from Topeka, Kansas, to Chillicothe, Missouri. The car in which they were riding was owned by Rosser and was being driven at the time by Lawson Fore. Attached to the car was Rosser's horse trailer with his horse in it.

As plaintiffs proceeded eastwardly their car was following a large automobile transport truck. As they neared the point of collision Fore saw the truck Doyle was driving approaching from the east. According to the testimony of Mr. Fore, the westbound truck veered across the road toward the south and sideswiped the transport. Following that impact the truck bounced back to the north and then returned to the south side of the road, striking the left side of the Rosser car. As a result of the collision, the Rosser car went over a 15-foot embankment and came to rest on its top. Plaintiffs got out of the car and were able to pull the horse out of the overturned trailer. They returned to the highway about five or ten minutes after the collision.

Frank Carter, undersheriff of Doniphan County, Kansas, testified that shortly before the instant collision he had received a call advising him that "a truck was taking too much of the highway" and he started out to find it; that when about one-half mile from the scene of the occurrence in question he received a radio call advising him of a "wreck just west of Troy"; that upon arrival he found a truck "crossways of the road on its side," and a Dodge car with trailer attached "on its top over the grade"; a transport truck was parked 200 feet beyond; that he talked with Doyle whom he described as "drunk" and, following that conversation, took him to jail. The view we take of this case makes it unnecessary to further detail plaintiffs' evidence except for the testimony of undersheriff Carter and plaintiff Fore as to statements made by Doyle at the scene of the collision and later when he was in jail. The first contention briefed by the appellant is that the court erred in admitting testimony (over its repeated objections) as to those out-of-court statements of Doyle.

The testimony of Carter which is complained of herein (objections omitted) is as follows:

"Q. Did you have occasion to talk to Doyle while he was in jail? A. Yes, sir.

"Q. Tell us just what he told you about this accident. A. You want when I talked to him at the scene?

"Q. Both at the scene and later on. A. I asked whose truck it was, where he lived, and he didn't have a driver's license and I asked how come he was driving that truck without a license. He said, 'I don't usually drive it, but I had to have some braces for a crib—.' I said, 'Where is the braces? They aren't on the truck,' and he said, 'They couldn't make them this evening, and I got to go back after them in a couple of days, had them ordered.'

"Q. Did he tell you where he had been? A. Been to St. Joseph.

"Q. Did he tell you where he intended to get the braces? A. No, I don't believe he did. He said they had to make them was the reason he didn't have them.

"Q. Is that what he told you at the scene? A. That is right.

"Q. Now then, did you have occasion to talk to him along the same lines at a later time? A. Oh, yes—talked to him every day [in jail].

"Q. Did he tell you at any other time about the mission he had in Missouri? A. He also told me he had a couple of teeth pulled while he was over there and that is the reason he drinks."

In rebuttal, Lawson Fore testified (objections omitted) as follows:

"Q. Mr. Fore, did you talk to Mr. Doyle at the scene and immediately after this accident occurred? A. I talked to him as soon as we got the horse out of the trailer and could get onto the pavement.

"Q. Did you make any inquiry from Mr. Doyle as to how or why he happened to be using this truck? A. I said, 'How come you are using the company truck?' and he said he had been to St. Joseph after some parts."

The various objections interposed to the foregoing testimony were that the statements of Doyle were hearsay, not a part of the res gestae, and an attempt to prove the fact and scope of agency and the scope of employment by out-of-court statements of the agent.

In connection with the foregoing it should be noted that it appeared from answers of appellant to interrogations that on September 17, 1954, Standard Milling Company owned the truck in question, and that Doyle was employed by said company as manager of its grain elevator at Hiawatha, Kansas, and his duties "consisted of receiving, shipping, storing and merchandising of grain, and improving and maintaining buildings and equipment," and that the "truck was used for moving grain on premises from flat storage facilities to dump pit and in moving railroad cars into position for loading grain. Also used in picking up supplies for elevator. Edward F. Doyle was authorized to use truck in going to and from work in Hiawatha, Kansas."

Mr. Doyle did not testify or appear at the trial. Defendants, however, presented the testimony of Harry Rosenberger, a utility worker at the elevator (the only employee other than Doyle), who stated that Mr. Doyle left the elevator about 9:30 on the morning of September 17, and never returned. On cross-examination he stated that on one occasion Doyle drove the truck to Falls City, Nebraska, and on another to Atchison, Kansas, but the witness was not permitted to state whether those trips were on company or personal business; that on one or two occasions Doyle had driven the truck to St. Joseph for lumber.

Max G. Strauss testified that he was assistant manager of appellant's "country elevator department" and that the Hiawatha mill was under his supervision; that the rods in a bin snapped in July 1954, and they were replaced in August 1954; that he was in Hiawatha on September 16 (the day before the casualty) and instructed Mr. Doyle not to use the truck for any personal purpose with the exception of going back and forth to work in Hiawatha; that on the 16th he had gone over the whole plant and the work and there was no business of the Milling Company that would have taken Doyle to St. Joseph on the 17th. He also stated that he had not heard of the trips to Falls City and Atchison until he had heard Mr. Rosenberger testify to that effect, but that the company had not had any business for Mr. Doyle to transact in those cities. Mr. Strauss stated further that he had given Mr. Doyle permission to go to St. Joseph in the early part of 1954 for some lumber that could not be obtained in Hiawatha. The witness also stated that Mr. Doyle was discharged immediately after receipt of a report of the collision.

W. E. Jamieson of the Jamieson Machine Company, St. Joseph, testified that his company had shipped some 28-foot rods and nuts to Standard Milling Company on August 17, 1954, by Ragland Truck Lines

but that nothing further had been sold to that company until they shipped a screw conveyer in December 1954.

We will now consider appellant's contention of error in the admission of Doyle's statements to Carter and Fore. The parties have apparently briefed the case upon the assumption that the law of Missouri would control in determining that question, as well as the contention, hereinafter discussed, that plaintiffs did not make a submissible case as to appellant. We will adopt that assumption, observing, in that connection, that ordinarily "the law of the forum controls as to * *. * the admissibility of the evidence; and the sufficiency of the evidence to go to the jury." 15 C.J.S. Conflict of Laws § 22i, p. 955. It has long been the rule in this state that "neither the fact nor scope of agency can be established by the mere out of court declarations of the alleged agent." State ex rel. Massman v. Bland, 355 Mo. 17, 194 S.W.2d 42, 45. In the instant case it was admitted that appellant owned the truck in question and that Doyle was employed as manager of its Hiawatha elevator. It was admitted in Doyle's answer that he was driving the truck at the time of the collision and such was tacitly conceded by appellant. In that situation the foregoing rule may be applicable in a general way to the statements under consideration, but it would seem that the strict question presented is whether the statements of an agent or employee are admissible to prove that the act of the employee was within the scope of his employment. While Doyle was admittedly employed by appellant, there was no evidence, aside from the statements complained of, that he was at the time of the collision engaged in the prosecution of his employer's business. In the absence of independent evidence of that fact, we have the view that the instant statements were not admissible to prove that Doyle was acting within the scope of his employment at the time of the instant occurrence. See Linam v. Murphy, 360 Mo. 1140, 232 S.W.2d 937(14); 57 C.J.S.

Master and Servant § 615, p. 406; Mason v. Nibel, 129 Okl. 7, 263 P. 121; State ex rel. Massman v. Bland, supra.

Plaintiffs, however, say that it was within the scope of Doyle's powers as manager of appellant's elevator to make the admissions complained of. We do not agree. In connection with this point it may be noted that Doyle was not an officer of the corporate defendant with authority to act generally for it. His authority and duties were strictly specified. The statements at the scene of the collision were apparently made in an effort to explain why he was driving the truck without a driver's license. These statements would not seem to have been made in the performance of any duty Doyle owed to the appellant. A rather similar situation existed in the case of State ex rel. Vesper-Buick Automobile Co. v. Daues, 323 Mo. 388, 19 S.W.2d 700, 67 A.L.R. 157. There a mechanic employed by a corporate defendant made statements at the police station tending to show that he was acting within the scope of his employment at the time the car he was driving struck and killed a child. We held that the statements were not binding upon, or admissible against, the employer, because the employee "was not engaged in the performance of any duty or service to his employer which was contemplated by his agency and employment at the time he is purported to have made the statements or declarations to the police officers." 19 S.W.2d 707. See also, Roush v. Alkire Truck Lines, Mo.Sup., 299 S.W.2d 518, and Davis v. Sedalia Yellow Cab Company, Mo.App., 280 S.W.2d 869.

In support of their position on this point plaintiffs have cited Laudwig v. Central Missouri Power & Light Co., 324 Mo. 676, 24 S.W.2d 625; Gregar v. Broadway Auto Laundry, Mo.App., 83 S.W.2d 142, and Kaufman v. Baden Ice Cream Mfrs., Mo.App., 7 S.W.2d 298. We think those cases are not applicable here. In each of them an agent of the defendant made statements while investigating the accident out

of which the suit arose. They were properly held to be admissible as having been made by the agent while performing a duty within the scope of his employment.

■ Next, plaintiffs assert that since it is admitted that appellant owned the truck and that it was being driven by its elevator manager, a prima facie case of agency was made and hence the instant statements were admissible as being corroborative of the showing of agency otherwise made. This contention is disposed of by our ruling of the last point considered. There we held that a showing of agency or general employment is not sufficient to make the declarations admissible. In the case before us it was necessary to show that the statements were made in the line of Doyle's duties and that fact was not shown by the evidence.

■ Plaintiffs also contend that the statements made at the scene of the collision were admissible as a part of the res gestae exception to the hearsay rule of evidence. The res gestae exception has been exhaustively treated with in Meyers v. Smith, Mo.Sup., 300 S.W.2d 474, Roush v. Alkire Truck Lines, supra, and Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777. In the case last cited we stated that the statement, to be admissible, must not be a "mere reflective narration of past events," and that "the true test is neither the time nor the place of a statement but whether it is a spontaneous statement produced by the event itself." 121 S.W.2d 781, 782.

While the statements in question would appear to have been made within five or ten minutes after the collision, we have concluded that they were not admissible under the res gestae exception. We can see nothing to indicate that they were spontaneous utterances produced by the event itself. There is no testimony to the effect that Doyle was suffering from shock or pain. The statements were made in response to questions and appeared to be primarily an effort on his part to explain why he was driving the truck, particularly without a driver's license. They were recitals of past events made after Doyle had had ample time to fully realize that he had probably violated a number of criminal laws. To some extent, at least, he appeared to be making an effort to present an excuse for those violations. As indicated, we have the view that under the foregoing circumstances, the admission of the instant statements was error.

Appellant contends that the trial court erred in overruling its motion for a directed verdict at the close of all the evidence, as plaintiffs had not presented proof that Doyle was in the prosecution of appellant's business at the time of the collision, and hence the judgment against it should be reversed outright.

■ We have already ruled that the only evidence offered by plaintiffs which would directly tend to prove that Doyle was acting within the scope of his duties at the time of the casualty were the statements which we have ruled were not admissible. We recognize, however, that upon a showing that appellant owned the truck and that Doyle, the driver, was in its general employment, a presumption arose to the effect that he was within the scope of his employment at the time the collision occurred. However, it has been said that such a presumption would take flight upon the appearance of substantial evidence tending to show the real facts and the issue must then be determined upon the facts in evidence. Guthrie v. Holmes, 272 Mo. 215, 198 S.W. 854; State ex rel. Steinbruegge v. Hostetter, 342 Mo. 341, 115 S.W.2d 802; Stone v. Reed, Mo.App., 247 S.W.2d 325; Miceli v. Williams, Mo. App., 293 S.W.2d 136. The precise question for our decision, therefore, is whether appellant presented sufficient substantial evidence of the actual facts concerning Doyle's use of its truck on the date in question to destroy the procedural presumption heretofore noted.

Upon that issue appellant presented evidence to the effect that there was no repair

work in progress at the plant on that day; that the repair work on an overloaded bin had been completed in August 1954; that no rods or other equipment had been ordered from Jamieson Machine Company of St. Joseph in the period from August to December 1954; that Doyle was not authorized to use the truck for personal purposes except in going to and from work in Hiawatha, and, according to Max Strauss, the appellant had no business "that would take Edward F. Doyle to St. Joseph and cause him to leave the place of business at approximately 9 o'clock in the morning and not return during the whole day."

■■ While the foregoing evidence has some semblance of substantiality in tending to prove that Doyle should not have been (and perhaps was not) using the truck in the performance of his duties as manager of the elevator at the time of the instant collision, we have concluded that it was not sufficient to destroy the presumption created by the admitted facts heretofore mentioned. This for the reason that no admissible evidence was presented by any of the parties to show Doyle's activities between 9 a. m. and 5:30 p. m. on the day of the collision, or where he went or his purpose in going wherever he may have gone. In other words, after all of the evidence was presented, it was still a matter of speculation as to whether Doyle in fact was or was not upon some mission which related to the performance of his duties as manager of the elevator. In the cases heretofore cited (which hold that the presumption disappeared upon the presentation of substantial evidence of the facts), direct testimony was offered (usually by the driver) as to the precise purpose for which the employee was using the employer's automobile. We therefore rule that the trial court did not err in overruling appellant's motion for a directed verdict and that the judgments against appellant should not be reversed outright.

Other points raised by the appellant will not be considered herein as the alleged errors complained of will not likely recur upon another trial.

■ As we have indicated, the judgments as to defendants Standard Milling Company must be reversed and the cause remanded for a new trial. In regard to the judgment of plaintiff Rosser, no contention has been made upon this appeal that error was committed in connection with the amount of damages assessed. It is therefore our view that the retrial of his claim should be limited to the issue of the liability of defendant Standard Milling Company. Hoelzel v. Chicago, R. I. & P. R. Co., 337 Mo. 61, 85 S.W.2d 126; McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135. However, as to the judgment of plaintiff Fore, it may be stated that appellant vigorously contends that error was committed in giving Instruction No. 5 relating to the assessment of his damages, and asserts further that the evidence was insufficient to support certain elements submitted therein. Without specifically determining that point, we deem it sufficient to say that our review of the transcript herein has caused us to conclude that there should be a retrial of that plaintiff's claim against the corporate defendant upon the issues of both liability and the amount of damages. It follows from what we have said that the issue of Fore's damages must also be retried as to defendant Doyle because, if that plaintiff obtains a verdict against the corporate defendant, it must be in the same amount against the other defendant. Davison v. Farr, Mo.App., 273 S.W.2d 500; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S.W.2d 559; De Long v. Broadston, Mo.App., 272 S.W.2d 493; Polkowski v. St. Louis Public Service Co., 229 Mo.App. 24, 68 S.W.2d 884.

The judgments herein are accordingly reversed and the cause remanded with directions to hold in abeyance the verdict of plaintiff Rosser against defendant Doyle until his claim is disposed of as to the

liability of appellant, and, after retrial of that issue, judgment should be entered for the amount of the verdict ($2,965.50) against Doyle and, if held liable, the appellant. As to the claim of plaintiff Fore, it is ordered that there be a retrial of the issue of the liability of Standard Milling Company and of the issue as to the amount of damages as to both defendants, with the verdict against defendant Doyle on the issue of liability to be held in abeyance pending such retrial.

VAN OSDOL, C., concurs.

COIL, C., concurs in result.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.