Benjamin G. Staley, Respondent, v. M. P. Lawler et al., Defendants, Michael P. Lawler, Appellant.

Kansas City Court of Appeals. April 7, 1930.

*Mytton, Parkinson & Norris* for respondent.

*Stringfellow & Garvey* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $3,000 and defendant, Michael P. Lawler, has appealed.

The facts show that plaintiff was injured on February 6, 1928, while standing in a public street in the city of St. Joseph when he was struck and injured by an automobile belonging to the defendant, Lawler (hereinafter called the defendant); that he was rendered unconscious by the collision and was taken to a hospital; that he regained consciousness in the hospital at which time there was present one Plumb, one Amelunxen, the driver of the car who was in the general employ of the defendant, and Amelunxen's wife.

No point is made in reference to the negligence of Amelunxen but defendant contends that his demurrer to the evidence should hav been sustained for the reason that there was neither evidence that might have been submitted to the jury establishing Amelunxen's agency for him at the time Amelunxen struck the plaintiff nor evidence upon which a presumption of agency might have been based.

The evidence relative to the question as to whether Amelunxen was upon the business of the defendant at the time the former struck plaintiff is as follows:

Defendant, Lawler, was and had been for many years engaged in the business of selling automobiles under the name of the Lawler Motor Company, owning and conducting an agency for Ford cars in St. Joseph. Amelunxen, who was a defendant in the cause was employed on a salary by Lawler and had been so employed for six or seven years and engaged in any work which he was directed to do which was chiefly the solicitation of purchasers of automobiles.

Plaintiff was the first witness in the cause and after testifying as to the collision and his being taken to the hospital he was asked what conversation he had at the hospital with Amelunxen. To this defendant, Lawler, objected and the testimony was admitted at that stage of the case for the reason it was learned that Amelunxen would later testify and might deny the admissions he made to plaintiff. In other words the conversation between plaintiff and Amelunxen was admitted for the purpose of impeaching Amelunxen. Plaintiff was asked:

"Q. What conversation did you have with Mr. Amelunxen? A. They asked me if I did not see him. I told them I did when his car was further away, but my attention was directed to the traffic. I asked

if he didn't see me. He said, 'well, no, he was in a hurry and was on his way to see a prospect for Mr. Lawler and his motor car company to sell him a car, and also to make collections,' the way I remember it, and he didn't see me."

Plaintiff then offered in evidence as admissions certain questions and answers by defendant, Lawler, made in the latter's deposition. In that part of his deposition offered in evidence by plaintiff Lawler testified that in the month of February, 1928, he had in his employ Amelunxen as a salesman; that the witness was the owner of the Ford car which was in Amelunxen's charge as salesman; that the car was operated under a license owned by the witness; that Amelunxen's duties were to sell automobiles and solicit orders for automobiles and "general work" . . . "anything I might delegate him to do such as janitor work if necessary." At the time this testimony from Lawler's deposition was read in evidence defendant's counsel stated that he thought he had a right to read the rest of the deposition which defendant later did, as part of his case.

Plaintiff introduced evidence tending to show negligence on the part of the driver, Amelunxen, testimony as to plaintiff's condition immediately after the injury and evidence that one Plumb had a conversation with Amelunxen at the hospital. Plaintiff then rested. Defendant requested a peremptory instruction which was refused. Defendant then offered and read in evidence the remainder of the deposition of the defendant. Lawler, which was to the effect that Amelunxen was classified as a salesman; that he had a right to sell cars at any time of the day under the rules; that it was not the custom for Amelunxen to solicit sales in the evening unless he did so on his own account unknown to the witness; that the witness ran his office between eight and six o'clock; that the largest number of sales was not made outside those hours; that salesmen did not make sales in the evening unless it was at the special request of the purchasers to come and call on them; that the rules and regulations of the office were that the men worked between eight in the morning and six in the evening; that he had talked with Mr. Lydick about one of the witness' cars having struck a man, the car driven by Amelunxen; that he did not recall that he said to Lydick that Amelunxen had authority to sell cars any time of the day or night; that he knew that Amelunxen had his car that evening; that he furnished all salesmen with the use of automobiles; that the cars were furnished permanently and charged to their account and they were held responsible for them; that they used those cars "for any purpose they see fit to. It is charged against them until the car is turned back or we recall it or sell it;" that it was the salesman's car all of the time, used in his business, and charged to him "for record purposes."

"Q. And they have the right to use that car in demonstrating for the purpose of making a sale any time during the twenty-four hours? A. They use it for personal or business purposes."

The witness had no regulations as to what movements the salesmen should personally make after business hours, and no rule denying them any right; their working hours are between eight and six; that is the end of their employment, "so far as we are concerned," "it is a verbal understanding." The witness did not recall any cars being sold after business hours because he did not have charge of that particular end of the business. He did not know whether Amelunxen sold cars outside business hours or not. His employees were supposed to work from eight in the morning to six at night, and he never asked a man to do any work after office hours. When the place closes it is closed. He never directed salesmen not to attempt to sell cars outside of business hours; that was a matter for their own judgment, it was left to their own judgment "absolutely." They were informed what the rules were in regard to the working hours, and they could use their own judgment what they were to do after that. "My old pep talk is that we never expect a man to do something that the boss won't do. I never work nights."

Defendant further testified that a salesman makes out his daily report and reports everything he had done that day, previous to his last report, and he either hands it in at six o'clock that night, or at the following morning meeting. Since June, 1927, to November, 1928, there really had been no cars to sell as the Ford Company was not making them. Consequently, employees were switched to other work. The witness kept four men and laid off the others and just had them around on whatever work could be found, to keep them for the new cars. If a salesman went out and demonstrated a car in the evening and tried to sell it the witness did not know it; "we have had" no occasion to make a demonstration of a Ford car for ten years. The cars furnished salesmen are to transport them around to see the customers, not to demonstrate the car. His business was different from other automobile concerns, they stay open every night; he closed at six. He ran a white man's shop; by that he meant that the salesman use their own judgment about how to sell the cars, make their own appointments absolutely, by white man's show he meant that it was run on American hours and in American ways.

Defendant introduced medical testimony and then called defendant Amelunxen as a witness. Amelunxen testified that on the night of the collision he was driving up Sixth street, going to a show with his wife: that when he left home he had in mind to go to the show; that he left home about twenty-five minutes after six; that he was going up Sixth street and did not see anyone; that he felt some-

thing against the car and his wife said, "I believe you hit somebody;" that he went over to the side of the depot and stopped and came back; that the plaintiff was lying in the street; that the ambulance was there in five minutes and took plaintiff to the hospital. The witness went to the police station to report and then to the hospital. It could not have been over ten minutes. The witness' wife went with him to plaintiff's room. The witness denied that he stated to plaintiff that at the time of the injury he was in a hurry to get uptown to see some prospect and sell a car for Mr. Lawler. Plumb, the witness' wife and an attendant were present. The witness remained there twenty or twenty-five minutes; was in the room ten or fifteen minutes. Plaintiff was conscious.

On cross-examination, the witness testified that he had seen the plaintiff when the witness was further down the street, but did not see him when he got up to him; that he saw him about 150 feet away; that plaintiff was standing still; that he did not see him when plaintiff was struck; that when the witness got back to the plaintiff the latter was semi-conscious, dazed more than anything else; that plaintiff sat up and stood up on his feet when he was helped into the ambulance; that the witness had a conversation with the plaintiff. The witness denied that he said he was going to see a prospect and make a collection. He testified that the conversation was in the presence of Mr. Plumb; that he and Plumb walked outside and had a conversation there; that he did not remember that he said to Plumb that he was in a hurry to make a call for Mr. Lawler and to make a collection and that it was his fault and that Mr. Lawler had insurance and plaintiff would be taken care of. The witness was asked this question:

"Q. I asked whether you had that conversation, in which you said to him that you were on business for Mr. Lawler, to make a collection, and it was your fault and that Mr. Lawler had insurance and, he would be taken care of? A. I didn't say that much, no, sir.

"Q. Just said part of it? A. I said what you said at first; not towards the last."

Mrs. Amelunxen was then called and testified that she was with her husband the night of the accident; that they were going to the theater; that they were not attending to any business that night; that after the collision they went to the police station and then to the hospital directly; that Mr. Staley was then conscious; that the witness talked to plaintiff and was present all of the time her husband was there; that she heard all the conversation. When asked if at any time her husband told plaintiff that he was on his way uptown for the purpose of attending to any kind of business for Mr. Lawler or anything of that kind, she said, "I don't ever remember of him saying anything like that." She testified that the only conversation she remembered was that her husband asked plaintiff

how he felt, and his condition, and if he was badly hurt; that she asked plaintiff if he remembered the taxies coming down the street and he said "yes" he remembered them and waited for them to pass, but said he did not look back and did not see the car from the opposite side; that was the only conversation she remembered. On cross-examination, she said that she did not remember her husband going out on the veranda at all; that she was standing right inside the door; that she did not hear the conversation between her husband and Mr. Plumb on the outside.

Defendant Lawler was then introduced as a witness for the defense and when asked if, on the night of the collision, Amelunxen was attending to any business for him, he replied: "Not to my knowledge." He testified further that he did not require Amelunxen to do any work at night or expect him to; that the working hours that he expected men to work were from eight o'clock in the morning until six in the evening; that Amelunxen was a salaried employee; that Amelunxen would not have received any more if he had worked from six to twelve that night; that the cars were given to the salesmen for permanent use as part of their salaries. On cross-examination the witness stated that he recalled meeting Mr. Lydick; that he did not state to Mr. Lydick that he did not know what Amelunxen was doing that night, or that it was perfectly proper for him to use the car on business, making collections or sales of cars. The witness denied the conversation "in regard to business." In reference to other hours than between eight and six the witness said: "I told him (Lydick) my salesmen had the privilege of using the car for any purpose that they chose, but their working hours were from eight to six." Defendant then rested.

In rebuttal, plaintiff was recalled and answered these questions:

"Q. Did you have any conversation with Mr. Amelunxen in the hospital? A. Yes.

"Q. What did he say to you? A. He asked me if I didn't see him coming. I told him I did quite a ways south and until I got out of the line of traffic and my attention was diverted the other way. I asked if he didn't see me. He said, 'well, no,' he was in a hurry to get to see a prospect and making collections for Mr. Lawler."

Mr. Plumb in rebuttal testified that he left the room at the hospital and went out on the porch with Amelunxen and had a conversation with him there.

"Q. Just tell the jury what the conversation was. A. This man followed me out on the porch. I went out to take a smoke. He came out and introduced himself and gave me a business card, 'Lawler Motor Company,' handed me a card.

"Q. With his name on it? A. Had his name on it down in the corner, 'Lawler Motor Company,' and 'Amelunxen' in the corner.

He told me at the time he said he had been in an awful hurry that evening and he was on his way to see a prospect and make some collections for Mr. Lawler and that he didn't see Mr. Staley at all, and didn't know he had hit him until after his wife told him, and he said, 'I guess there isn't any way of telling how serious it is yet, but Mr. Lawler is insured and I can assure you everything will be taken care of.''

Mr. Lydick testified that he was one of the attorneys for plaintiff: that he had a conversation with Mr. Lawler in which the matter of Amelunxen's right to use the car in defendant's business other than between the hours of eight and six was discussed, and when requested to tell the jury what Lawler said, stated:

''During the course of the conversation with Mr. Lawler he said Mr. Amelunxen had authority and permission to use the car for the purpose of making sales any time during the day or night. It was not always convenient to see people desiring to buy cars during working hours, and he said he was in Chicago that day and did not know what Amelunxen was doing; had no report of the accident until some days later.''

The witness further testified that nothing was said in that conversation about Amelunxen being required to have special authority in the matter.

The foregoing is the substance of all the evidence on the subject of the capacity in which Amelunxen was acting at the time of the injury to plaintiff.

At the close of all the evidence, defendants requested an instruction in the nature of a demurrer as to defendant Lawler, which instruction was refused and defendant Lawler excepted. Counsel for defendant requested the court to give instruction No. C, as follows:

''The court instructs you that in determining your verdict as to the defendant Michael Lawler, you will disregard the evidence of plaintiff that defendant Amelunxen told plaintiff that at the time of the accident Amelunxen was on his way to sell a car for Mr. Lawler and collect an account.''

This instruction was refused, to which defendant Lawler excepted

Appellant insists that his demurrer to the evidence should have been sustained because (1) there was no evidence that the car at the time of the accident was being used on Lawler's business, (2) that the testimony that defendant Amelunxen stated he was on business for defendant Lawler was not competent evidence of that fact, because (a) it was not a part of the *res gestae*, (b) that the declaration of an alleged agent made to a third person in the absence of the alleged principal are not competent against the principal to prove agency. (c) as to defendant Lawler, this testimony was hearsay, (d) evidence of statement made by witness out of court, when received to impeach his contrary testimony in court, cannot be

treated as independent evidence, (3) no presumption arose under the facts in evidence that Amelunxen was driving the car on Lawler's business, (4) that when a presumption does arise because of the absence of evidence of the facts, the presumption disappears when evidence of the facts is introduced, (5) that if a presumption ever arose in this case that Amelunxen was driving the car on Lawler's business, it disappeared when the evidence was introduced showing the nature of Amelunxen's employment and the customary use of the car at night solely for his own purposes (6) that defendant Lawler's evidence, giving the details of Amelunxen's employment and the use of the car, was brought into the case by plaintiff and should be considered as part of plaintiff's case, (7) that the evidence to overcome the presumption may be introduced by either party, (8) that Lawler's testimony was unimpeached, (9) that Mrs. Amelunxen's testimony was unimpeached, (10) that it is for the court to say whether the facts in this case are sufficient to overcome the presumption, (11) that with the burden of proof resting on plaintiff, the jury cannot find for plaintiff merely by disbelieving defendant's evidence, (12) that the relation between Lawler and Amelunxen at the time of this accident was merely that of bailor and bailee, (13) that proof of ownership, plus general employment as a salesman, under the facts in this case, are not sufficient to make a case for the jury.

All of the above points and others are elaborately briefed, discussed and argued *in extenso*, evidencing great industry and earnestness. However, as we view this case, it is unnecessary, and it would serve no useful purpose, to consider and discuss all these various points, numerically and alphabetically listed, for at the end of each of them we return to the vital point in the case, which simply presents the question as to whether or not there was anything, presumption or evidence, remaining in the case at the close of the evidence, to submit to the jury, and upon which the jury would be authorized to find that the driver of the car at the time of the injury to plaintiff was engaged in business for defendant.

Appellant, relying upon Guthrie v. Holmes, 272 Mo. 215, and numerous other adjudicated cases following it, contends that no presumption in behalf of plaintiff, that the driver of the car was on the owner's business, ever arose in the case, and if such presumption did arise it disappeared in the face of defendant's evidence.

We think there is no question but that there was sufficient evidence to give rise to a presumption in behalf of plaintiff that Amelunxen, the driver of defendant's car, was on the latter's business at the time he ran into plaintiff. The fact that Amelunxen was in defendant's general employment is undisputed. There was evidence in the way of admissions of the defendant contained in his deposition and his admissions to the witness Lydick tending to show

that Amelunxen was authorized to transact business for which he was employed by the defendant either during business hours or thereafter, that is to say during day or night. In other words there was evidence tending to show that Amelunxen's general employment was not confined to office hours or business transacted between eight in the morning and six in the evening. There is no testimony that may be considered in connection with the demurrer to the evidence that Amelunxen was on the business of defendant and acting as his servant at the time he struck plaintiff, this fact resting entirely upon a presumption arising from testimony which may be considered for other than impeachment purposes. The testimony that Amelunxen was on the business of defendant was competent only by way of impeachment of testimony favorable to defendant tending to overcome the presumption in question. However, it is quite evident that there was ample evidence to give rise to the presumption in question, which is one of law, that Amelunxen was upon the business of the defendant at the time the former ran his car against plaintiff. [Guthrie v. Holmes, 272 Mo. 215; Bond v. St. L. & S. F. Ry. Co., 288 S. W. 777, 782; Downs v. Horton, 287 Mo. 414, 434, 435.]

However, defendant contends that no presumption arose in behalf of plaintiff because the evidence of the defendant Lawler was brought into the case by plaintiff through the introduction of Lawler's deposition, which contained evidence overcoming the presumption, if any. This evidence relied upon by the defendant was brought out by the reading of the remainder of Lawler's deposition in order to explain the admissions made in that part of the deposition that had been read by plaintiff. The court ruled that defendant could read any part of the deposition not read by plaintiff "that relates to the same subject." [Gunn's Admr. v. Todd, 21 Mo. 303, 306.] We need not pass upon the question as to whether the deposition was competent, or may be considered, for any other purpose than bearing on the admission, but assuming that it may be considered for all purposes, even its self-serving parts, the testimony of Lawler contained therein did not prevent the presumption from arising.

It may be that if in a given case the plaintiff relies upon a presumption of this kind but before the introduction of testimony by plaintiff that might otherwise tend to give rise to the presumption, he brings out facts tending to show that the alleged employee was not acting within the scope of his authority, the possibility of such a presumption arising at anytime in the case would be at an end. However, in this case such a question is purely an academic one because even if the testimony of defendant read by his counsel can be considered as binding upon plaintiff unless impeached (and Lawler was not made a witness of plaintiff by the introduction by plaintiff of any part of Lawler's deposition, Hope v. Bank, 142 Ga. 310),

it is not sufficient to establish as a court matter that Amelunxen was not within the scope of his employment as the agent of the defendant at the time plaintiff was struck. This is because Lawler's testimony in his deposition is subject to more than one inference. It may be construed as tending to show that Amelunxen was engaged in the business of the defendant only during business hours and that his permission to use the car after that time was for his own private purposes. On the other hand it may be construed to mean that he had authority to use the car on defendant's business either during business hours or after they were over, but was not required to work after six P. M. In other words the testimony in the deposition is not a positive and unequivocal denial of the right of Amelunxen to use the automobile for defendant's business during the nighttime as well as during the day. [See Robb v. Bartels, 263 S. W. 1013, 1015.] The testimony being subject to an inference either way it cannot be said, as a court question, that its presence in the case, before there was sufficient evidence tending to give rise to the presumption in question, prevented that presumption from arising.

The presumption having arisen there is nothing in the record which would justify us in saying, as a court question, that it did not continue at the close of all of the testimony. The denial of Lawler and Amelunxen that the latter was upon the business of the former at the time the latter ran into the plaintiff was impeached, if as a matter of fact the evidence of *Lawler* given by him on the stand at the trial is of such positive and unequivocal nature as to authorize us in saying that it was sufficient, as a court question, to overcome the presumption regardless of his admissions shown in the testimony by other witnesses tending to impeach his evidence, if any, that Amelunxen was not upon his business at the time he struck the plaintiff. The testimony of Amelunxen that he was not upon the business of Lawler was impeached by the testimony of both plaintiff and Plumb as to Amelunxen's admissions to them. The presumption having arisen it remained in the case to the end, unless it was destroyed by evidence adduced by defendant tending to show that Amelunxen was not engaged in the business of defendant at the time the former struck the plaintiff. This evidence however, must have been positive, unequivocal and unimpeached. [Robb v. Bartels, 263 S. W. 1013, 1015; Newton Co. Bank v. Cole, 282 S. W. 466.]

There is no question but what the demurrer to the evidence was properly overruled. As before stated there were sufficient facts to give rise to the presumption that Amelunxen was on the business of the defendant at the time he ran the car into plaintiff and the testimony on the part of the defendant tending to show to the contrary was either lacking in positiveness and unequivocalness or was

impeached. Therefore, the presumption remained in the case at the time the cause was submitted to the jury.

Defendant cites a numer of cases and authorities in an effort to show that the statements made by Amelunxen were not part of the *res gestae*. It is unnecessary to decide this question because the statements were properly shown for impeachment purposes.

It is claimed that the testimony of Mrs. Amelunxen to the effect that she and her husband were going to the theater and were not attending to any business at the time the car struck plaintiff, was not only not impeached but was not contradicted by any testimony in the case. However, we do not regard her testimony as being of that degree of positiveness that is required to overcome the presumption in question as far as the court is concerned. She did not state upon what she based her knowledge of the intention of Amelunxen at the time in question, and there is nothing in the testimony tending to show that she was in position to know of his intention at that time. The question of intention is a matter difficult of proof and exists only in the mind of the person to whom the intention is attributed. Where such person's intention is in issue he may in some instances testify as to it, but as far as other persons are concerned the evidence of his intentions rests upon his acts and conduct, and in some instances his declarations, but there is nothing whatever in the testimony of Mrs. Amelunxen bearing upon these. Her testimony in reference to his intention was merely her conclusion and ought not to be given sufficient weight to overcome the presumption existing in the case, at least insofar as the question is one for the court.

What we have said disposes of plaintiff's instruction No. 1.

Defendant's instruction C was properly refused. There is no question but that plaintiff's testimony was competent to impeach Amelunxen, and if competent for any purposes it was admissible subject only to a limiting instruction confining its evidentiary value. [Cazzell v. Schofield, 8 S. W. (2d) 580, 590.] But instruction C was not properly so limited. It would have prevented the jury from considering testimony of plaintiff for impeachment purposes. Defendant relied, at least in part, upon the testimony of Amelunxen to overthrow the presumption in question. Plaintiff was entitled to have the jury consider his evidence of statements made by Amelunxen in determining the weight of the latter's evidence given at the trial. The proposed instruction required the jury to disregard it for all purposes as to the defendant Lawler.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.