Hermie FENNEREN, Plaintiff-Respondent,

v.

Walter Lee SMITH, A. H. Mainard, and R. L. Shifflett, d/b/a S. and W. Quarries, Defendants-Appellants.

No. 46711.

Supreme Court of Missouri.

Division No. 1.

Sept. 8, 1958.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 13, 1958.

Opinion Modified on Court's Own Motion Oct. 13, 1958.

L. M. Crouch, Jr., Robert W. Spangler, Elvin S. Douglas, Jr., Crouch, Crouch & Spangler, Harrisonville, Pine & Dixon, Warrensburg, for appellants.

J. William Blackford, Blackford, Imes, Compton & Brown, Kansas City, for respondent.

VAN OSDOL, Commissioner.

Plaintiff, Hermie Fenneren, sought recovery of $35,000 damages in this action for personal injuries against defendant, Walter Lee Smith, and Smith's employers, defendants A. H. Mainard and R. L. Shifflett. Plaintiff was injured when defendants' 1949-model Reo "dump truck" loaded with gravel driven by defendant Smith collided with plaintiff's 1948-model Chrysler sedan at a point on County Road "B" approximately a quarter of a mile south of Creighton in Cass County.

Plaintiff had alleged defendants' negligence under the humanitarian rule in failing to stop or swerve defendants' truck or to warn plaintiff of its approach; and primary negligence of defendants in driving at a high, dangerous and excessive rate of speed; in driving to the left of the center of the road; in failing to look out; and in failing to have the truck under proper and reasonable control. Defendants by their answers denied generally; and defendants Smith and Mainard pleaded contributory negligence of plaintiff, and, respectively, stated counterclaims for personal injury and property damage. At the conclusion of all of the evidence, defendants filed their motion for a directed verdict. The trial judge indicated the motion was to be sustained, and defendants Mainard and Smith voluntarily dismissed their counterclaims without prejudice. At the trial court's direction the jury returned a verdict for defendants, and, thereupon, judgment for defendants was rendered; however, the trial court sustained plaintiff's motion for a new trial, but erred in failing to specify of record the ground or grounds on which the new trial was ordered. Defendants have appealed from the new-trial order.

Defendants-appellants, pursuant to Supreme Court Rule 1.10, 42 V.A.M.S., pp. 8–9, timely served plaintiff with a statement making the allegation of the trial court's error, and plaintiff-respondent has filed the original brief herein in which she assumes the burden and undertakes to demonstrate

that the trial court was correct in awarding her a new trial. Supreme Court Rule 1.10, supra; Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535. She had assigned in her motion for a new trial, and herein asserts that defendants were negligent as a matter of law and, alternatively, that she made out a case submissible to a jury. She argues there was substantial evidence requiring the submission of negligence of defendants under either and both the theories of primary negligence of defendants and of negligence of defendants under the humanitarian rule.

In driving from a point south of and toward Creighton on the "gravel" County Road "B" the highway traveler moves almost due northwardly over "a little rise" or knoll three or four hundred feet south of a sixty-foot bridge and, having reached the bridge the traveler moves over and down a short incline at the north end of the bridge to the roadway of lower level which, some distance farther to the northward, turns or veers somewhat to the northeast in approaching Creighton. The bridge is not precisely parallel with the road; it sits at a slight northeast-southwest angle. The bridge has banisters on either side. The traveled portion of the bridge is eleven feet in width. Concrete aprons or abutments extend approximately six or eight feet from either side of the south end of the bridge along the sides of the graveled roadway. South of the bridge the roadway is nineteen feet in width, but the roadway, that is, the traveled, graveled portion of the road narrows "down as it gets closer to the bridge."

A day or so before the collision much of the excess gravel on the roadway had been "bladed" over to or near the west side of the graveled or traveled portion. There is a deep ditch along the west side of the road (south of the abutment) in alignment one or two feet west of a southward projection of the west side of the bridge; and a scant growth of grass and weeds south of the bridge along the east margin of the roadway, which growth and some gravel had been affected by the "blading" of the grader in such a way as to make a low "windrow" along the east side of the roadway. A depression a foot or so in depth is along the east side of the road.

Plaintiff testified that, driving northwardly in her Chrysler about six feet wide at about ten o'clock on a "beautiful" February morning, she approached and passed over the "little rise" or knoll three or four hundred feet south of the bridge. She had been driving at the speed of thirty-five miles per hour and, having passed over the knoll, plaintiff used the foot brake in slowing to the speed of "between twenty-five and thirty." She said that any time after she passed over the knoll, she could have stopped the Chrysler within forty feet. When she was about one hundred fifty feet from the bridge she saw defendants' dump truck "coming on" the north end of the bridge. The truck was going fast, "the gravel was falling off of it * * * it was throwing dust from the top of it." Later in her testimony, plaintiff said the truck was moving between thirty-five and forty miles per hour. The truck "came right straight across the bridge." Plaintiff stepped on the foot brake, "got over as far as I could," and "stopped and pulled the emergency brake, and the truck was right there." When she braked the Chrysler "the wheels slid." According to her testimony the Chrysler was stopped before plaintiff put on the emergency brake. The truck driver (defendant Smith) did not turn to the right after plaintiff saw him—"he was going straight ahead." He was not looking at plaintiff. Plaintiff "threw my arms up"—tried to get the truck driver's attention. The vehicles came into contact at a point about twenty-seven feet south of the bridge, the left front of the truck struck "the left wheel and left window" of plaintiff's car.

Defendant Smith testified he was driving his truck (which including its load weighed 22,000–23,000 pounds, and was around seventeen or eighteen feet long with bed approximately eight feet wide) southwardly

from Creighton. He was moving fifteen or twenty miles per hour when he came to the bridge. When he came to the bridge he saw plaintiff "was somewheres between two or three hundred feet away and she looked like she was driving too fast to stop, and I didn't want to be trapped on there I didn't pretend to stop. When I got somewhere near the center I honked my horn and I could tell somewhere near she applied the brakes, I could tell by the way the car was reeling and she came on towards me and when I got off the bridge I pulled off and applied my brakes." Again, defendant Smith said when he got halfway across the bridge "and it didn't look like she was going to stop, and I honked my horn and I could see she was braking her car, and I swung to the right * * *." When the impact occurred the rear end of the truck was about ten feet "off" the bridge. Defendant Smith said plaintiff had not stopped the Chrysler before the collision. When the vehicles collided plaintiff was going "I judge thirty * * *," and the truck was moving "approximately ten, maybe a little better."

After the collision defendants' truck was standing headed southwestwardly with its rear end nine feet south of the bridge. The right front wheel was in the ditch west of the roadway. The left rear dual wheels were near the center of the roadway, and the right rear dual wheels were east of the southward projection of the line of the banisters on the west side of the bridge. Plaintiff's Chrysler was "angling to the northwest just a little bit" with its right rear wheel on the "windrow" of weeds on the east side of the roadway. The damaged left front side of the Chrysler was a very little east of the center of the roadway. According to a witness for defendants, the Chrysler had skidded or slid forty-four and four-tenths feet.

■ Before approaching the review of plaintiff-respondent's contentions, we shall consider the contention of defendants-appellants that plaintiff's petition was in-

sufficient in stating a claim of negligence under the humanitarian rule. Plaintiff had alleged that, although "the defendants saw or in the exercise of the highest degree of care, should have seen the automobile the plaintiff was driving in a position of imminent peril and danger of being struck by the truck, in time thereafter to have by the exercise of the highest degree of care on the part of the defendants, stopped the said truck, or swerved the same aside, or diverted the course thereof, or to have given a signal of warning nevertheless, defendants neglected and failed to do any of said acts so as to prevent the collision."

It is noted the averment does not include an allegation to the effect that, after they knew or should have known plaintiff was in a position of imminent peril, defendants had the present ability with the means at hand to have averted the impending injury *"without injury to himself or others."* Defendants-appellants particularly complain of plaintiff's failure to plead the quoted italicized phrase. See constitutive fact "(3)" of a claim under the humanitarian rule as set forth in Banks v. Morris & Co., 302 Mo. 254, at page 267, 257 S.W. 482, at page 484. The petition properly should have more definitely averred facts equivalent to constitutive fact "(3)", including the phrase "without injury to himself or others," but we think the petition should not be held bad because of the omission. Liberally construed, we think that by fair intendment the quoted averment included the essential elements of a claim under the humanitarian rule, and we have no doubt defendants knew plaintiff was intending to state facts calling for the application of the rule. (This is not to say it is unnecessary to hypothesize and submit, in effect, the constitutive facts, or facts essential to a plaintiff's recovery under the rule, including the fact of a defendant's present ability, with the means at hand to have averted the impending injury *without injury to himself or others,* except in a case where there is no substantial evidence that defendant in acting to avert the impending

injury would have endangered the safety of himself or others, there is no error in omitting the phrase we have italicized. Eller v. Crowell, Mo.Sup., 238 S.W.2d 310, and cases therein cited.)

Turning now to plaintiff-respondent's contention that defendants were negligent as a matter of law and the trial court should have directed a verdict for plaintiff—this contention is urged on the theories that defendants were bound by the testimony of defendant Smith, and that in testifying defendant Smith had said he had seen plaintiff's vehicle approaching; saw that she was sliding the wheels of the Chrysler; but instead of attempting to stop defendants' truck, defendant Smith "honked" and drove on at the same or accelerated speed into collision with plaintiff's vehicle. In making this contention, we realize that plaintiff has relied, at least in part, on her own oral testimony of the circumstances of her approach to the bridge, that is, that, having approached, plaintiff was able to and did stop her Chrysler on the east side of the roadway south of the bridge; whereas, defendant Smith had testified that plaintiff had driven her vehicle, in approaching the bridge, and to the point of collision and into collision with defendants' truck at a speed of thirty miles an hour. We have the view that, on the ultimate issue of plaintiff's right to recover, defendants were entitled to have the jury consider defendant Smith's explanation of his failure to apply the brakes and thus endeavor to stop the truck short of the point of collision. He testified he didn't want to be entrapped on the bridge. We cannot say, as a matter of law, his fear and responsive conduct was unreasonable, giving credence to his testimony of the circumstances of the approach of plaintiff's car. And we bear in mind that a jury would not be required to believe plaintiff's testimony to the effect that, before the vehicles had collided, she had succeeded in stopping her Chrysler south of the bridge.

■ The contention is resolved adversely to plaintiff-respondent.

Attending now plaintiff-respondent's contention that substantial evidence required the submission of her case to the jury on the theories of primary negligence of defendants or of their negligence under the humanitarian rule, or on both. In treating with this contention we shall review the evidence from the standpoint most favorable to plaintiff, giving her the benefit of any part of defendants' evidence favorable to her, and not contrary to her fundamental theory of recovery, giving her the benefit of all reasonable inferences from all of the evidence, and disregarding defendants' evidence unfavorable to her. Peterson v. Tiona, Mo.Sup., 292 S.W.2d 581.

Contrary to the argument of defendants-appellants, numerous photographs of the position of the vehicles after the collision with respect to each other, the margins of the roadway, and the bridge, do not in this case conclusively demonstrate that plaintiff's version of the occurrence of the collision was in conflict with physical facts; neither may we consider, as defendants-appellants apparently would have us do, the oral testimony of defendants' witnesses of their measurements of distances and spaces, and of the positions of the vehicles after the collision, as decisively affecting the question of the substantiality of the evidence in supporting the submission of plaintiff's case to the jury. We shall accept as true plaintiff's testimony that she succeeded in stopping her Chrysler south of the bridge with its right side "in the weeds" at the east side of the roadway, and shall reject defendants' evidence tending to show plaintiff did not stop her vehicle but drove it partially over on the left (west) half of the roadway and into collision with defendants' truck. (In this connection, we overrule the contention that plaintiff was contributorily negligent as a matter of law in driving over or partially over the center of the roadway, the contention being urged upon evidence introduced by defendants.)

■ With respect to plaintiff-respondent's contention that her case was submissible to the jury on the theory of primary

negligence of defendants—it would seem unnecessary here to restate the evidence applicable here. Plaintiff testified, as we have stated, that defendants' truck was moving over the bridge at the speed of thirty-five to forty miles per hour. We think a jury reasonably could find that driving the truck at such speed, in the circumstances shown in evidence, heavily loaded as it was, over the narrow one-lane bridge was negligence; and we believe it is clear that plaintiff's testimony was substantial in tending to show that defendant Smith was not looking. And, from the evidence that the truck was driven "straight ahead" in moving over and off the south end of the bridge and into collision with plaintiff's vehicle, the jury could reasonably find that prior to and when the dump truck had moved off the bridge it was not being driven by defendant Smith under such control as to enable the driver to take into account the approach of plaintiff's vehicle and to drive the truck to the right on the right half of the roadway which roadway, south of the bridge and to the point of collision, was, according to evidence, sufficiently wide to accommodate southbound traffic on the right half thereof.

Of plaintiff's contention as to the submission of humanitarian negligence—considered in the light most favorable to plaintiff, the evidence we have stated justifies the reasonable conclusions that plaintiff approached and stopped her Chrysler south of the bridge with the left wheels of the Chrysler on the east margin of the roadway. The evidence is substantial in supporting the further fact that defendant Smith moved his vehicle "straight ahead" over and off the bridge at a speed of thirty-five to forty miles per hour and into collision with the Chrysler, which he saw or should have seen was approaching immediately south of the bridge and in a position of danger if the dump truck continued on "straight ahead." According to plaintiff's evidence the Chrysler, six feet in width, was stopped in such a position that its right wheels were in the weeds on the east side of the roadway; and, obviously, a jury reasonably could find plaintiff's car impinged upon or extended over approximately two feet into the eleven-foot-wide southward projection of the eleven-foot width of the bridge, and approximately six inches over into the pathway of the truck, eight feet in width, being driven straight ahead down the center of the eleven-foot width of the bridge. There was evidence tending to show a sufficient interval or space between the left side of the Chrysler and the west side of the roadway for defendants' vehicle to have moved safely (to the right) west of plaintiff's car, and, it could be reasonably inferred that, had defendant Smith acted in swerving even less than a foot to his right the impending collision and plaintiff's injury would have been averted. But, it could reasonably be found that defendant Smith, continuing straight ahead as plaintiff said he did, brought the left front of the dump truck into collision with the left front of plaintiff's Chrysler. We have the opinion plaintiff's case was submissible to the jury on negligence under the humanitarian rule in failing to swerve. With respect to humanitarian rule negligence in failing to stop or sound a warning, however, we have the contrary opinion.

██ Defendant Smith testified defendants' truck was moving fifteen or twenty miles per hour. As stated, plaintiff testified the truck was moving thirty-five or forty miles per hour. Evidence was introduced by plaintiff tending to show the distances within which the truck, moving at the speed of fifteen or twenty miles per hour, defendants' truck could have been stopped. Plaintiff did not introduce evidence tending to show the distance within which, moving at a speed of thirty-five or forty miles per hour, the truck could have been stopped. Thus, plaintiff did not supply the evidence from which we can now say whether or not a jury reasonably could have found that defendant Smith could have stopped the truck and averted the collision and plaintiff's injury after defendant Smith had progressed to the point in moving southwardly where-

at a jury could reasonably have found he saw or in the exercise of the highest degree of care should have seen that plaintiff was in imminent peril. Having thus failed to introduce evidence tending to show the distance within which defendants' vehicle could have stopped if moving at a speed of thirty-five or forty miles per hour, plaintiff, in this case, should not be permitted to disregard her own testimony as to speed, as being inaccurate or untrue, and recover on the theory that the truck was traveling fifteen or twenty miles per hour and could have been stopped short of the point of the impending collision. A plaintiff is entitled to the benefit of defendant's favorable evidence when that evidence does not contradict plaintiff's own testimony and is not contradictory to plaintiff's fundamental theory of the case (Fisher v. Gunn, Mo. Sup., 270 S.W.2d 869), although it has been held that a party is not conclusively bound by his estimates of time, speed or distance. Smith v. Siercks, Mo.Sup., 277 S.W.2d 521; Hayes v. Coca-Cola Bottling Co. of St. Louis, Mo.Sup., 269 S.W.2d 639; Davis v. Kansas City Public Service Co., Mo.Sup., 233 S.W.2d 669; State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S.W.2d 406. It is more fully explained that where the testimony of a party is not a positive statement of fact within his own knowledge, but a mere estimate or opinion, it does not have the effect of a judicial admission. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is subject to inexactness of observation. "Thus a party is not conclusively bound by his mere estimate of time, speed or distance, or the position of an automobile or train at the time of an accident. His testimony in regard to such matters does not preclude him from relying upon the more favorable testimony of other witnesses in the case, *unless the testimony of the other witnesses is inconsistent with his theory of the case* or contrary to physical facts." (Our italics.) Smith v. Siercks, supra [277 S.W.2d 525] and cases therein cited. In our case plain-

tiff's testimony of the speed of defendants' truck was not a positive statement of fact —it was more in the nature of an estimate. But it was an estimate of a material fact upon which plaintiff was without doubt relying in support of her theory of primary negligence of defendants in operating their truck "at a high, dangerous and excessive rate of speed under the conditions then and there existing." Furthermore, plaintiff testified that defendants' truck was moving fast—gravel was falling off of it—it was throwing dust from the top of it. It was the theory of her case that defendants' truck was moving at excessive speed in the circumstances. We think the italicized language in the quotation from the Smith case is applicable here. See again and compare Fisher v. Gunn, supra. And it would seem plaintiff should not wish to take the position that she may recover on the theory of humanitarian rule negligence in failing to stop by taking advantage of defendant Smith's testimony that the truck was moving at a comparatively slow rate of speed and also urge, as she does here, that she may also recover on the theory of primary negligence of defendants in moving their truck at a high, dangerous and excessive rate of speed.

Plaintiff had testified that she had seen defendants' truck moving onto the north end of the bridge when she, moving northwardly, was one hundred fifty feet south of the bridge. She had not heard defendant Smith sound a warning. But when she was one hundred fifty feet from the bridge she was no longer oblivious of the approach of defendants' truck, and, according to her testimony, could have stopped her Chrysler within forty feet. Assuming that no warning was sounded, we, nevertheless, cannot see any substantial basis for a finding that sounding a warning would have been effective in averting the collision. Substantial evidence of the fact of a plaintiff's obliviousness is essential in making out a case of humanitarian negligence in failing to warn. Beckwith v. Standard Oil Co., Mo.Sup., 281 S.W.2d

852, and cases therein cited; Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W. 2d 764.

The order awarding plaintiff a new trial should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OS-DOL, C., is adopted as the opinion of the court.

All of the Judges concur.