TERMINAL WAREHOUSES OF ST. JO-
SEPH, INC., a Corporation, Plaintiff-
Appellant,

v.

Amelia Lynne (Phillips) REINERS,
Respondent.

Amelia Lynne (Phillips) REINERS, Counter-
claimant-Respondent,

v.

TERMINAL WAREHOUSES OF ST. JO-
SEPH, INC., a Corporation, et al.,
Counterclaimant-Appellants.

No. 49636.

Supreme Court of Missouri,

Division No. 1.

Sept. 9, 1963.

Motion for Rehearing or to Transfer to
Court En Banc Denied Oct. 14, 1963.

Joseph M. Garvey, Brown, Douglas & Brown, R. A. Brown, St. Joseph, for appellants.

John B. Ewing, Jr., James E. Lockwood, Kansas City (Brenner, Ewing, Lockwood & O'Neal, Kansas City, of counsel), for respondent.

COIL, Commissioner.

Terminal Warehouses of St. Joseph, Inc., hereinafter sometimes called Terminal, brought an action against Mrs. Amelia Reiners for $2,500 for alleged damage to its truck. Mrs. Reiners (then Miss Phillips) counterclaimed against Terminal and Walter Bollman as an additional counterclaim defendant for $250,000 as damages for personal injuries she received on July 28, 1956, when the automobile she was driving came into collision with Terminal's truck being driven by Bollman. The jury found against Terminal on its claim and for Mrs. Reiners on her counterclaim against both counterclaim defendants and fixed her damages at $110,000. Terminal and Bollman have appealed. Both claim, inter alia, that respondent failed to make a submissible case.

■ Respondent submitted her case on Bollman's alleged humanitarian negligence in failing to swerve. In determining whether there was evidence to support the submitted hypothesis that after respondent came into a position of imminent peril Bollman, in the exercise of the highest degree of care, could have swerved and thereby have avoided the collision, we review the evidence from a standpoint favorable to respondent, give her the benefit of any part of appellants' evidence favorable to her, give her the benefit of all reasonable inferences from all the evidence and disregard appellants' evidence unfavorable to her. Fenneren v. Smith, Mo., 316 S.W. 2d 602, 606 [3]. So stating the evidence, a jury reasonably could have found the facts to be as stated herein.

Terminal operated a cold storage warehouse and a rendering plant. The truck Bollman was driving was owned by Terminal; it weighed 8,800 pounds, was seven feet wide, and had been specially constructed for the hauling of dead animals. Just prior to the accident in question Bollman had picked up a dead cow and was proceeding to obtain another animal at the time of the collision. He was traveling generally south on Highway C in Clinton County and at the time of the collision was negotiating a curve traveling downhill southeastwardly. The left front of his truck came into collision with the left front of a Cadillac being driven by respondent in the opposite direction, i. e., around the curve traveling uphill northwestwardly. (For clarity we shall refer to Bollman's right-hand side of the road as west and Mrs. Reiner's right-hand side of

the road as east, as though the road at the place in question ran north-south.) The asphalt highway was 22 feet wide and had no center line painted thereon. The west shoulder was two feet wide. The day was clear, the highway and its shoulders were dry, and there was no other traffic in the vicinity.

Respondent remembered nothing of the accident other than that as she was proceeding northwardly (she thought on her side of the road) toward the top of the hill she saw a flash.

Bollman was driving 35 miles per hour at the time he saw respondent's car approaching at 35–40 m. p. h. Although Bollman claimed that the vehicles were then 100 feet apart, there was testimony to the effect that Bollman's right rear outside dual tire left a continuous mark near the west edge of the road beginning at a place 48 feet north of the point of impact. At that place the tire mark went onto the shoulder and led to the rear of the truck which had come to a stop in a ditch some 24 feet south of the rear of the Cadillac which remained on the highway. The Cadillac did not move substantially from the point of impact and after the accident its left side was eight feet from the west edge of the road and 10 feet from the edge of the west shoulder. There was a 10 to 12-inch ditch immediately west of the shoulder.

The evidence supported a reasonable inference that the Cadillac was traveling in the middle of the road, probably straddling an imaginary center line, but traveling in a relatively straight line and not, as appellants contend is an established fact, at an angle toward the left front of the truck. That inference is supported by the testimony of both Bollman and a highway patrolman, who testified to the distance from the east and west edges of the road to the *left side* of the Cadillac. Their testimony was so stated that the jury could have found from it that the Cadillac's left front was no closer to the west or east edge of the road than its left rear, indicating

a relatively straight line of travel; and certain of the photographic exhibits picturing the automobile at the scene of the accident, while not conclusive, support the same conclusion. The main damage to the automobile was to the left front corner and along its left side which was damaged as far back as the rear wheel.

Assuming that Bollman's reaction time was three fourths of a second, his truck at 35 m. p. h. traveled 38½ feet while he reacted. Thus he saw respondent and, the jury reasonably could have found from his actions, recognized her position of imminent peril when he was more than 86 feet from the point of impact. But be that as it may, and whatever his reaction time, the important thing as to submissibility is that the tire mark made by Bollman's outside rear dual tire began 48 feet north of the point of impact, clearly indicating that he had more than a second (speed of 35 m. p. h. and sufficient braking to leave a tire mark for 48 feet) in which to have swerved or driven to his right. Indeed, Bollman contends that he did swerve and drive to his right as far as possible and, in fact, swerved so far that he went into the 10 to 12-inch ditch in an attempt to avoid the collision, but that he could not avoid it because respondent's car kept coming toward him. Physical facts, however, to which the highway patrolman testified demonstrate that Bollman's testimony was inaccurate in that respect because at the time of the impact apparently the truck was on the surface of the road and did not go onto the shoulder or into the ditch until after the collision. Consequently, it seems to us and we have no doubt that the jury was justified in finding that Bollman recognized respondent's position of imminent peril in ample time to have swerved to or driven upon the west shoulder with safety to himself.

The close question as to submissibility as we see it is whether, even if Bollman had swerved or driven to his right as far as reasonably possible, the left front of his truck or its widest part (7 feet) would have avoided contact with the Cadillac.

That question is made difficult by the facts that there is no positive evidence as to how close to the west edge of the road the right rear tire of the truck was as it approached and reached the impact point and there is no definite evidence of the extent to which the left front of the truck and car overlapped at the time of collision.

The highway patrolman said that the 48-foot tire mark up to the impact point was at the "very edge" of the roadway, but he said he did not measure the distance from the west edge of the roadway to the west side of the tire mark and that he did not know exactly how far the tire mark was west of the west side of the Cadillac. Some of Bollman's testimony indicated that his right rear tire was about six inches from the west side of the road until he left the pavement and went into the ditch. On the other hand, if the jury believed the highway patrolman's testimony that the driver's side of the Cadillac was eight feet from the west edge of the road, then the jury could have reasoned further from the facts in evidence that the left side of the truck must have been more than eight feet from the west edge of the road, else a collision would not have occurred; and, further that if Bollman had driven his truck so that its right side was one foot onto the west shoulder, at least two feet would have separated the left sides of the vehicles. The jury reasonably could have so found because, as noted above, the evidence showed that the left (driver's) side of the Cadillac was eight feet from the west edge of the road when it stopped, that its position indicated that it had been traveling in a relatively straight line, that the truck at its widest point was seven feet and, consequently, there would have been no collision had Bollman driven as far to his right as reasonably possible.

■ As noted above, the answer to this question is further complicated by the fact that there was no direct evidence to indicate the extent to which the left fronts of the two vehicles overlapped when they collided.

As we have stated heretofore, the pictures in evidence indicate extensive damage to the Cadillac, but it is true that the severest damage is to the left front corner and along the left side, and the pictures indicate that the main damage to the truck is to the left front and along the left door of the cab. In our view it was for the jury to decide whether, under all the facts and circumstances in evidence, the overlapping of the left fronts was slight and that Bollman, by turning to his right an additional foot or foot and a half, would have avoided the collision.

■ It is our conclusion that it was peculiarly a matter for the jury to determine whether, in the exercise of the highest degree of care, Bollman, by swerving or driving to his right within the distance available and with reasonable safety to himself, could have avoided the collision. See Fenneren v. Smith, supra, 316 S.W.2d 607.

The liability of Terminal depended upon whether Bollman at the time of the accident was its agent or servant. That issue was submitted to the jury and was determined favorably to respondent. The first evidence pertaining to the "agency" issue was adduced by Terminal's witness, counterclaim defendant Bollman. He testified that he and his partner, Rullman, were and had been for about ten years engaged in picking up dead animals and delivering them to Terminal's rendering plant where they sold them at so much a pound; that they (Bollman and Rullman) would receive calls from various places and on July 28, 1956, the day of the accident, they had received calls and Bollman was to make stops at Easton and Kearney and, as heretofore noted, he had made one of the stops prior to the accident; that the truck Bollman was driving was owned by Terminal; that they were using the Terminal truck because theirs was being repaired so he (Bollman) "borrowed" the truck under an arrangement whereby he and his partner were to furnish or pay for the

gas and oil at regular service station prices and, in addition, pay Terminal so much a mile, the amount to be determined by speedometer readings taken before and after the trip; that although Rullman took care of or perhaps usually took care of paying for the truck, Rullman was not present on the day in question when Bollman obtained the truck and it was he, Bollman, who made arrangements for the truck and who agreed to pay therefor; that he paid for the gas and oil but did not know how much he paid; that he paid for the use of the truck but did not know how much he paid, although he had a ticket at home showing payment; that he has four trucks of his own, the beds on two of which belong to Terminal and the other two belong to someone other than Terminal.

Eldon McKee, Terminal's vice-president, was respondent's witness. He testified that Terminal operated a cold-storage warehouse and a rendering plant; that it used to own eight or nine trucks which it used to pick up dead animals but due to the advent of many independent haulers, Terminal had sold four or five of those trucks and had rented Mr. Rullman two truck beds; that Terminal would still pick up dead stock when a call came direct to the plant; that Terminal had no record which reflected the July 28th transaction with Bollman or Rullman, although ordinarily, as we understand, such a transaction would have been shown by its records; that there was no written contract with either of them but he, the witness, had an independent recollection of the July 28th transaction. Mr. McKee's version was that he talked with Mr. Rullman (not Bollman) about the truck both before and after the accident; that Rullman called him at his (the witness's) home and he gave Rullman authority to use the truck upon Rullman's request to rent the truck; that he assumed the truck was to be used for the purpose of delivering a dead animal to Terminal's rendering plant but that the truck could have been used for any purpose; that the truck was verbally leased to Rullman under the same terms as other of Terminal's trucks were leased to other independent haulers, i. e., the hauler to pay his own gas and oil expense and pay the company three cents a mile for each mile the truck was driven; ordinarily the trucker would be charged mileage based on speedometer readings, but the speedometer on the truck involved in the present accident was not available because the truck was demolished; that there was no payment made for the use of the truck on July 28, 1956, because the basis for payment could not be determined. The witness testified further that neither Bollman nor Rullman had ever worked for Terminal in any capacity; that neither belonged to the union which operated in the plant; and that no social security tax was ever withheld for either.

Terminal contends that there was no substantial evidence that Bollman was its agent or servant at the time of the accident in question.

Respondent, to justify the submission of that issue, relies upon a presumption which she says arose from the fact of the ownership of the vehicle, viz., the presumption that the driver thereof was the agent or servant of and was driving the vehicle at the time in the service of the owner. She contends that such presumption arising from admitted ownership could not be destroyed except by "positive, unequivocal and unimpeached" evidence showing that Bollman was not the agent or servant of Terminal or was not engaged in its service at the time of the accident. Respondent proceeds from those asserted principles to the supporting argument that the testimony of Bollman and McKee which we have heretofore reviewed was contradictory and unconvincing and certainly not "positive, unequivocal and unimpeached." Respondent points out the discrepancies and contradictions in the testimony of the two witnesses; for example, that Bollman claimed that he had paid Terminal for the use of the truck and had a ticket showing such payment, but Mr. McKee said no payment had been made because a subsequent

speedometer reading could not be obtained, despite the fact, says respondent, that pictures of the truck introduced in evidence clearly show that there was not sufficient damage to the cab of the truck to have damaged the speedometer and certainly the truck was not demolished as Mr. McKee stated; that Bollman testified that he had borrowed the truck, whereas McKee stated that he had leased the truck to Rullman. It is also pointed out that in Terminal's original petition to recover for damage to its truck, the allegation was that its truck was "being then and there driven by Walter W. Bollman" without any allegation as to Terminal's having leased it or without any other description of Bollman's status; that there was no written evidence pertaining to any rental of the truck on the day of the accident; that Bollman said he paid for the gas and oil used, and Terminal denied that anything was paid therefor; that Rullman in his answer (the case was dismissed as to Rullman) denied that Bollman was his agent or employee and that Rullman did not appear as a witness in this case.

Respondent concludes from all the foregoing that the contradictory and evasive testimony adduced on the question of agency did not destroy the presumption of agency and thus there was a submissible issue as to Bollman's agency. We are unable to agree. We are of the view, for the reasons which will appear, that there was no substantial evidence that Bollman was Terminal's agent or servant at the time of the accident and that consequently the trial court erred in submitting the issue of Terminal's liability.

 We shall assume, as seems to be indicated in some of the cases, that proof of the ownership of a vehicle is sufficient to raise a presumption that the vehicle was being operated at a given time by the servant or agent of the owner and that such agent or servant was then acting in the scope of his agency or employment. See Rockwell v. Standard Stamping Co., 210

Mo.App. 168, 241 S.W. 979; Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S.W.2d 717, 723; Sowers v. Howard, 346 Mo. 10, 139 S.W.2d 897, 902 [4, 5]. (Such a presumption, however, differs from and should be distinguished from the one usually discussed in the cases, i. e., that upon proof that a certain employer owned a certain vehicle which was being driven at the time in question by one of his regular employees, a presumption arises that such employee was driving the vehicle in the service of his employer. See, for example, Rosser v. Standard Milling Co., Mo., 312 S.W.2d 106, 111 [6] and cases there cited.) Assuming, however, as noted above, that a presumption of agency arises from ownership alone and applying to that presumption the language of some of the cases dealing with the presumption arising from both ownership and the fact that the vehicle was being driven by a regular employee of the owner, it is true that some of the cases did hold, as contended by respondent, that the presumption having once arisen remained in the case unless destroyed by positive, unequivocal and unimpeached evidence. See, for example, Staley v. Lawler, 224 Mo.App. 884, 27 S.W.2d 1039. But this court, in State ex rel. Steinbruegge v. Hostetter, 342 Mo. 341, 115 S.W.2d 802, made it clear that any presumption of the agency of the operator of a vehicle arising from proof of the ownership of that vehicle or arising from proof of ownership coupled with proof that the operator was then a regular employee of the owner, disappeared upon the adduction of substantial evidence on the issue of agency. That has been the well-established rule since that time and is in accord with the oft-expressed view of this court that a presumption is a rule of law (unless it is a conclusive presumption, i. e., a rule of substantive law) which puts the burden of producing some substantial evidence on the party presumed against; but that when substantial evidence is adduced, the presumption disappears and the jury receives the issue free of any presumption. Of course, the facts which gave

rise to the presumption in the first place remain in the case and those facts, as well as the facts to the contrary, are for the jury. Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 139 [1–4].

(It is true that in Rosser v. Standard Milling Co., supra, as well as in some other cases, we have stated with reference to such presumptions that the question was whether there was "sufficient substantial evidence" to destroy or to overcome the procedural presumption. But, of course, when substantial evidence on the question of agency is adduced, the presumption is gone and no longer exists; so that it is not accurate to say that the issue is whether certain evidence is sufficient to overcome or destroy a presumption which no longer exists. If the evidence adduced is not "substantial evidence," the presumption, of course, remains. An examination of the Rosser case, however, at 312 S.W.2d 112 [7, 8], clearly indicates that the court used the language that the evidence adduced (although substantial) was "not sufficient to destroy the presumption" to express the idea that the facts upon which the original presumption was based (ownership coupled with the general employment of the driver) were sufficient under the circumstances of that case to constitute substantial evidence of agency and thus it was for the jury to say whether the employee-driver was at the time of the accident acting within the scope of his employment.)

■ This court has held that *substantial evidence* "is evidence which, if true, has probative force upon the issues, i. e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them; it is evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts, to establish which the evidence was introduced. State v. Miller, Mo.Sup., 202 S.W.2d 887, 889; Berkemeier v. Reller, 317 Mo. 614, 296 S.

W. 739, 752; State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 51, 52." Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 820 [5, 6].

■ Applying the principles heretofore stated to the facts of the present case, it is apparent that inasmuch as we properly may not rule as a matter of law that the probative force of the testimony of Bollman and McKee on the issue of Bollman's agency was totally destroyed by reason of the noted contradictions and discrepancies appearing therein, their testimony, despite those alleged contradictions and discrepancies in and the alleged evasiveness of that testimony, had probative force upon the issue of Bollman's agency and, consequently, constituted substantial evidence. Collins v. Division of Welfare, supra.

It follows that the presumption of Bollman's agency disappeared upon the adduction of that substantial evidence but, as noted above, the facts which originally gave rise to that presumption remained. In this case, the only fact which gave rise to the presumption of Bollman's agency was that Terminal owned the truck involved in the accident. That fact, standing alone, could not be substantial evidence that Bollman was the agent or servant of Terminal or that he was acting within the scope of his employment at the time of the accident. It is true, as respondent points out, that admittedly Bollman was on a mission which would result in a dead animal being delivered to Terminal to be rendered in Terminal's plant. That fact, however, even when considered with the fact of ownership of the truck does not support a reasonable inference that Bollman was Terminal's agent. Nor may we say that Bollman's and McKee's testimony, considered separately or as a whole, supported any inference of Bollman's agency. (Other cases relied on by respondent, such as State ex rel. Dick & Bros. Quincy Brewery Co. v. Ellison, 287 Mo. 139, 229 S.W. 1059, and Herrin v. Stroh Bros. Delivery Co., Mo.App., 263 S. W. 871, 875 [6], did not rest upon a "mere

presumption arising out of the ownership" but upon substantial evidence and reasonable inferences therefrom.)

■■ The burden was upon respondent to prove Bollman's agency and while agency may be implied from the facts in evidence in a given case, no reasonable construction of the facts here supports an inference of agency. Mere suspicion that one may have been another's agent at a time in question is not enough. Pashalian v. Big-4 Chevrolet Co., Mo.App., 348 S. W.2d 628, 632 [2-4]. In our view, respondent did not make a submissible case on the issue of Bollman's agency and the trial court should have directed a verdict for Terminal.

Our ruling above, that a verdict should have been directed for Terminal, makes it unnecessary to consider other points briefed having to do only with Terminal.

We decline the invitation in point V of appellants' brief to furnish an advisory opinion with respect to the proper scope of cross-examination under the stated circumstances in view of appellants' concession that the point is not vital and in view of the record which demonstrates that there was no undue curtailment of appellants' counsel's cross-examination.

Appellants contend the trial court erred in overruling their objections to allegedly improper jury argument made by respondent's counsel. The only new-trial assignment in appellants' joint motion for new trial pertaining to jury argument deals with counsel's argument as to "the degree of care required of various parties to the lawsuit." The portion of the record referred to in the brief shows the following:

"MR. SIMMONS: * * * We want people to be very careful when they are on the roads, and they are under the same duty to be very careful toward others on the roads. And we made another agreement in the very beginning, that a person should exercise every opportunity to avoid injuring another person.

"MR. BROWN: I object to that statement. That is not the law, and it is an improper argument. An automobile driver must use the highest degree of care.

"THE COURT: The Court instructed the jury on that particularly, that particular point as I recall. The Jury will be governed by the Court's Instructions and apply them accordingly.

"MR. SIMMONS: To finish my statement, exercise every care if he can do so with safety to himself, and we agreed that was fair. Now, I want to talk about this law in regard to Mrs. Reiners counterclaim. This law, as every other law, is not complicated, it is what is right and what is wrong, and what is fair I think. If a person is driving along a highway and has the opportunity without hurting themselves, to avoid hurting someone else, they ought to do so.

"MR. BROWN: I object to that. That is not the law. It is the exercise of the highest degree of care. I object to the argument and ask that it be stricken and the jury instructed.

"MR. SIMMONS: I said he ought to do so, and I object to Mr. Brown continually interrupting. I said he ought to do so. I ask that Mr. Brown be reprimanded for this type of conduct.

"THE COURT: The Jury has been instructed on the law governing this case.

"MR. BROWN: I must object to the insufficiency of the ruling and must request an absolute ruling. If I am not right maybe I deserve to be overruled, but—

"THE COURT: (Interrupting) Then you are overruled. The Court instructed on the law of the case."

The foregoing quoted portion of the record effectively demonstrates that there was nothing in the statements of respondent's counsel, considering those statements as a whole, which indicated or tended to indicate to the jury that the degree of care a motorist must exercise was anything

other than the highest degree of care. Under those circumstances, no purpose would be served in examining the question as to whether and, if so, when certain suggested general statements by a trial judge, such as "the jury will remember the evidence" or "the jury will be governed by the court's instructions" do or do not constitute proper or sufficient "rulings."

The judgment as to Walter W. Bollman is affirmed.

The judgment as to Terminal Warehouses of St. Joseph, Inc., a corporation, is reversed.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.